GEORGE MYERS *et al.*, Appellants, *v.* WILLIAM TURNER, Appellee; and

SAME *v.* SAME.

APPEAL FROM LOGAN.

The assignment of an interest in a patent, granted for an ornamental design for an "horological cradle," is a sufficient consideration to enable a party to recover on promissory notes given therefor, although the invention may be practically of but little value.

That although the assignment described the patent as being for " an horological cradle," it will be understood as of the thing patented, without reference to all the parts which constitute a cradle.

Where the patent assigned is referred to by date, it may be presumed the purchaser examined it for himself. The maxim of " *caveat emptor* " would apply to such a transaction.

THESE were actions of assumpsit on promissory notes. The sole defence goes to the consideration of the notes. It is presented by three pleas.

1st, That the notes were given for an interest in a supposed patent for an " horological cradle," whereas there was no such patent, but only a patent for an "ornamental design" for an "horological cradle."

2nd, That said notes were given for an interest in a supposed patent, which interest said Turner was supposed to hold by an assignment from the patentee, and that no such assignment had been recorded according to law.

3rd, That said notes were given for an interest in a supposed patent, and that said patent contains more than is necessary to produce the described effect, which addition was made for the purpose of deceiving the public.

Pleas traversed and trial by court by agreement, DAVIS, Judge, presiding, at September term, 1855, of the Logan Circuit Court. The defendants below gave in evidence an instrument in writing made by one Alexander Edmunds, purporting to transfer to the plaintiff and one McCarty Hildreth, a certain interest under a patent to said Edmunds, of date Feb. 23, 1853, for an "horological cradle," which instrument is an assignment of said Turner's interest therein to the defendants below.

Defendants also gave in evidence a patent and specifications to Alexander Edmunds, of date Feb. 22nd, 1853, for an "ornamental design" for an horological cradle.

Defendants also proved by said Edmunds that this is the only patent ever issued to him, and that the notes herein were given for the supposed transfer evidenced by the two successive assignments herein before mentioned.

This was all the evidence.

The court gave judgment for the plaintiff below, and defendants appeal and now assign for error that the court below erred in rendering judgment for the plaintiff below.

STUART and EDWARDS, and LINCOLN and HERNDON, for Appellants.

L. P. LACEY, for Appellee.

CATON, J. These actions are upon promissory notes, to which the defendant pleaded a want of consideration. On the trial was given in evidence by the defence a patent issued by the United States to Alexander Edmunds, bearing date the 23rd day of February, 1853, for " a new and useful design for a cradle." The *claim* set forth in the specification, and which is referred to

and made a part of the patent, is as follows: "What I claim as my production, and desire to secure by letters patent, is the design and configuration of the ornaments above described and set forth, forming together an ornamental design for an Horological Cradle." A conveyance was also shown from Edmunds to Turner and Hildreth of the right to certain specified territory of the United States. This conveyance or assignment recites that, "Whereas, Alexander Edmunds, of Mt. Pulaski, in the county of Logan, and State of Illinois, did obtain letters patent of the United States for an Horological Cradle, which letters patent bear date the 23rd day of February, 1853." It then assigns to Turner and Hildreth "all the right, title and interest which I have in the said invention as secured to me by the said letters patent, for to and in the States," &c. On the back of this conveyance they also showed an assignment by Turner of his interest therein to John and George Myers, for which the notes on which these actions were brought were given; and the real question in these cases is, whether this assignment conveyed an interest in the patent issued to Edmunds, as it purported to do. If it did convey such interest as it professed to, then such conveyance constituted a consideration for the notes, although it may be true that the invention was practically of little or no value. The pecuniary value of an ornamental design must, to a great extent, depend on the public taste or fancy, of which the purchaser must be the judge. *Caveat emptor.* The objection is that the assignment was of a patent "for an Horological Cradle;" whereas the patent granted was for an ornamental design for an horological cradle. To us the answer is obvious and satisfactory. The assignment does not pretend to use any technical words of description of the thing or right assigned, nor does it pretend to quote from or use the words of the patent in describing the right sold. In ascertaining whether the assignment was void, we must consider the case the same as if Edmunds were now prosecuting the assignees for an infringement. And in such a case, I am sure he would stand but a poor chance with either court or jury. The subject matter of the transfer was beyond all doubt the rights secured to Edmunds by the patent; such is the express language of the assignment.

In describing the thing patented, language in most common use is used. It is universal in speaking of an invention applied to a particular machine to speak of the machine, as being the subject matter of the patent, as Danforth's Patent Mowing Machine, or Manney's Patent Reaper, or Wood's Patent Sawmill, or Woodworth's Patent Planing Machine; and yet, in almost all cases the part of the thing patented is very insignificant as compared with the whole. The right to make and use nineteen-

twentieths of the very thing thus spoken of as patented, being common to all men; and yet it would hardly be denied that an assignment by the patentees, in such general terms as are usual in speaking of the thing to which the patented part is attached, would convey the right to make and use the thing actually patented. Nor would it be pretended that the purchaser would suppose he was getting the exclusive right to make the entire machine and every part of it. So of the cradle. The novelty invented might have been in the propelling power which keeps it in motion, or some particular part of it, in the form of the bed of the cradle, or the frame to which it is attached, and by which it is supported; or it might have been in the manner of attaching the body of the cradle to the motive power, had there been any novelty in these, or in any other part of the entire thing, whether of great or of little importance, or whether really useful, or only ornamental. In either case, in common acceptation, the cradle to which such improvement would be applied would be called the patent cradle; and yet, by such designation, no one would suppose that every part and parcel of the cradle was new and patented. To find out the real extent of the new invention for which the patent was issued, resort would necessarily be had to the patent itself. Without such reference it is not probable that in one case in a thousand, where the purchaser, from a mere inspection of the machine, or the name given it by the inventor, would be able to determine, with any degree of certainty, what is covered by the patent. If the patentee sells the right to make such machines by the name which he gives it, or by any other designation or description which shows satisfactorily that he designed to sell to the assignee, the rights which were secured to him by the patent, the assignment would, as a matter of course, convey the right the same as in the sale or transfer of any other right, interest or property.

Had the subject matter of this conveyance been anything else which may be the subject of transfer, it would hardly have been contended that no title passed by reason of any supposed misdescription in the assignment; and yet, in this case, there is no provision of law requiring any technical or particular description of the thing sold. It is, as in all other cases, still a question of fact. What did the party design to sell, and what did the purchaser expect to get? No one can doubt that the patentee designed to sell his patent right secured by the patent referred to; and the purchasers could not, as reasonable men, have expected they were purchasing the exclusive right to make every part and member of the cradle which, was known by the designation of Edmund's Horological Cradle, for the form of

some parts of it at least, must have been familiar to them from childhood, and they could not have supposed Edmunds the original inventor; and, indeed, this remark will apply to by far the greatest portion of the machine. Of some parts at least, they did not suppose they were purchasing the exclusive right to make. Then what parts did they suppose they were purchasing the right to make ? If they could form no definite idea from an inspection of the machine itself, necessarily they had to resort to other means of information. This case does not show that they had any other representations or means of information except the patent itself. Had this patent proved of vastly more value than the price paid for it, by which the defendants were accumulating rapid fortunes, they would have been slow to perceive any defect in the description by which they were to be stopped in their career of success. If we could not in that case hold the assignment void for a misdescription, we cannot now say that the assignees did not get the right which, by the patent, was granted to the patentee. If they did, then that of itself, whether really valuable or not, constituted a sufficient consideration for the notes sued on. The notes then were not given without consideration.

On the argument it was suggested, and even pressed, that if a failure of consideration is not shown, a case of fraud is made out which should entitle the defendants to judgment. Much that has already been said will as well apply in answering this position and need not now be repeated. There is no evidence of any false representation by the plaintiff or by Edmunds in any way or at any time, unless it is found in the assignment itself, the provisions of which, as to this point, have already been considered. The assignments refer specifically to the patent by date, and it may not be a very violent presumption to suppose that the purchasers examined it to see what they were buying. Should I buy a piece of land of a party by some general description which, without some reference to something else, would be unintelligible, but in my deed reference is made to the original patent by which it was conveyed by the government to my grantor, the description would become as certain, definite and satisfactory as if that description were copied into my deed; and nothing short of positive proof of a fraud or clear mistake would remove the presumption that I had examined or understood the contents of the patent. There is not near as much suspicion of fraud in this case as there was in *Edmunds* v. *Myers*, 16 Ill. 207, and yet in that case we reversed the decree and dismissed the bill because the charge of fraud was not sustained. That suit grew out of this same transaction.

The judgment must be affirmed.

*Judgment affirmed.*