### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

---

ABRAHAM ARONSON & another *vs.* GEORGE ORLOV & others.

Suffolk. December 4, 1916. — July 2, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Malicious Interference. Equity Jurisdiction,* To enjoin unlawful interference. *Master and Servant. Jurisdiction. Patent. Equity Pleading and Practice,* Master, Appeal, Amendment. *Damages,* In equity, Interest.

A bill in equity may be maintained by a firm who were manufacturers and sellers at retail in various parts of the country of close fitting petticoats constructed in accordance with an invention of one of them providing a certain amount of elasticity within the seams, which has not yet been patented but which is a trade secret, against two former employees and a third person to restrain the defendants from interfering with the business of the plaintiffs by making use of the trade secrets and for damages for past interference, where it appears that one of the defendants while in the plaintiffs' employ learned the secret, that he communicated it to the other defendant while he was employed by the plaintiffs and that they then left the plaintiffs' employ and entered into a business arrangement with the third defendant, who knew all the circumstances, for the manufacture and sale of petticoats made in accordance with the plaintiffs' idea in competition with the plaintiffs, that this plan was carried out and the defendants wrote letters to customers of the plaintiffs threatening them with prosecution for infringement of alleged rights of the third defendant under the patent laws, whereby such customers were caused to break valuable contracts with the plaintiffs and other prospective purchasers were deterred from entering into contracts with the plaintiffs, all of which was done with the deliberate purpose of injuring the plaintiffs' sale of garments manufactured according to his invention.

No rights exist under a patent until it has been granted.

Previous to the issuance of a patent, no case can arise under the patent laws respecting the relative rights of the parties to or under a patent, such that the exclusive jurisdiction of the case would be in the United States courts.

Although in the suit above described the plaintiffs in their bill alleged that they held by assignment the rights of the one of their own number who had filed an application for a patent for his device which still was pending, and that one of the two defendants who formerly were employees had filed such an application and had assigned his rights to the third defendant, and that such application also still was pending, the suit was not one arising "under the patent laws of the United States," and the State court had jurisdiction of it, both because it did not appear that any patent had been granted and because the gravamen of the suit was the malicious and wrongful interference with the plaintiffs' business and not an infringement of rights under a patent or an application therefor.

It is proper to overrule exceptions to a master's report which relate only to findings of fact and refusals to find facts, where the evidence before the master is not reported.

Where a master is not required, under the rule committing a suit to him, to report the evidence, it would be improper for him to do so without an order of the court.

In the suit above described, after the filing of the master's report, the defendants moved to amend their answers by alleging that their application for a patent was pending until three months after the bill in equity was filed, when it was divided and a divisional application was filed covering a part of the original claim, which was granted to one of the defendants and a fourth party three months later. The motion was denied. From earlier pleadings of the defendants and answers to interrogatories propounded to them it appeared that they purposed to deny or conceal the facts about any application on their behalf for a patent. *Held*, that the question of the allowance of the motion was within the discretion of the judge and that it could not be said that he had abused that discretion, especially since the issuance of the patent would not have been decisive of the suit.

By going to trial on the merits in a suit in equity the defendant waives a right to defend on the ground that the plaintiff has a complete remedy at law.

In the suit above described it appeared that, owing to a change in fashion, the elastic petticoat, and therefore the plaintiffs' invented idea which the defendants had appropriated, at the time of the decision had little present value, so that no injunctive relief needed to be granted; but, it appearing upon the master's finding that, from the interference of the defendants with contracts between the plaintiffs and their customers, the plaintiffs had been damaged to the extent of $5,692.67, it was *held*, that the suit should be retained for the awarding of such damages to the plaintiffs; and also that the plaintiffs were entitled to interest on that sum from the date of the master's report.

BILL IN EQUITY, filed in the Superior Court on July 21, 1914, and described in the opinion.

In the Superior Court the suit was referred to a master. The material facts found by the master are described in the opinion. The defendants filed exceptions to and a motion to recommit the

report, as well as several motions for leave to amend their answers, all of which are described in the opinion. After a hearing by *Fox*, J., an interlocutory decree was entered by his order overruling the exceptions and denying the motions. The defendants moved that such interlocutory decree be vacated. After a hearing, that motion also was denied by the same judge and, upon a motion by the plaintiffs for a final decree, he reserved the case for determination by this court upon all the pleadings and the master's report.

*C. H. Dow*, for the plaintiffs.

*G. R. Nutter*, for the defendants.

Rugg, C. J. The case, as stated in the bill, is that the plaintiffs are and for a long time have been manufacturers of petticoats in Boston and sellers of the same to large retail dealers in various parts of the country; that in November, 1912, one of them, named H. Aronson, conceived an invention to remedy some of the difficulties encountered in the use of close fitting petticoats by providing a certain amount of elasticity in connection with the seams; that later he filed an application for a patent on this invention; that the plaintiffs subsequently manufactured petticoats in accordance with the idea of H. Aronson, which were called "Flexo Seam;" that in December, 1912, two of the defendants, Fatherson and Wachtel, were in the employ of the plaintiffs and by reason and in the course of that employment the plaintiffs communicated to them the knowledge of this improvement; that subsequently Fatherson and Wachtel left the employ of the plaintiffs and entered into an arrangement with Orlov, the other defendant, who was not then a manufacturer of petticoats and who knew all the circumstances, whereby they were to develop the Aronson idea and then Orlov was to manufacture and sell petticoats in competition with the plaintiffs among their customers, and that this plan had been carried out, and that letters had been written by the defendants to the customers of the plaintiffs threatening them with prosecution for infringement of alleged rights of the defendant Orlov under the patent laws, whereby certain customers were caused to break contracts with the plaintiffs for the purchase of petticoats of their manufacture, and other prospective purchasers were deterred from entering into contracts for such purchases, all to the great damage of the

plaintiffs. The defendants answered, in substance admitting none of these allegations and denying them all. The case was sent to a master. His findings support in all essential particulars the averments of the bill, except that it is not clear whether Wachtel learned of the proposed improvement conceived by Aronson while in the plaintiffs' employ, or was told of it by Fatherson, who learned of it directly from Aronson. But he finds in addition that the attorney of Orlov and the defendant Fatherson filed an application for a patent in January, 1914, which has not been disallowed, and that in the April or May following Aronson filed an application for a patent which has been disallowed. The defendants, in the name of the defendant Orlov, in April and May, 1914, wrote and mailed two thousand or three thousand letters to the trade throughout the United States, including those known to them to be customers of the plaintiffs. These letters stated in substance that petticoats of their manufacture, called "Wundre Seam," were patentable and that patents had been applied for and that "I am the assignee and owner of these patent rights," that the writer was informed that attempts were "being made to manufacture and sell similar articles," and notified the recipient that "the purchase by you or offering of such articles for sale will be an infringement on my rights and make you liable to me for damages." This letter was sent, according to the master's finding, not only to the trade but to the plaintiffs' customers, "with the deliberate purpose of injuring the plaintiffs' sales of the Flexo Seam garments," the trade name adopted by the plaintiffs for the garments manufactured by them in accordance with the idea conceived by H. Aronson.

Apart from the questions arising because of the applications for patents, it is plain that the plaintiffs make out a case for equitable relief on the facts found by the master. The idea of the improvement in the manufacture of garments was Aronson's. It was not a mere nebulous phantom of the fancy, but a definite conception of a material device so simple that its mere statement would convey as clear a notion as would a model of a complicated mechanism. This idea was used rightfully by the plaintiffs. Fatherson was the first of the defendants to know of that idea and he learned of it solely by reason of and in the course of his employment by the plaintiffs. The doctrine is well settled that

an employee cannot lawfully use for the advantage of a rival and to the harm of his employer confidential information which he has gained in the course of his employment. This rests upon the implied contract, growing out of the nature of the relation, that the employee will not after the termination of his service use information gained during the period of his employment to the detriment of his former employer. This doctrine has been frequently applied in this Commonwealth and it prevails generally. *Peabody* v. *Norfolk*, 98 Mass. 452. *American Stay Co.* v. *Delaney*, 211 Mass. 229. *Essex Trust Co.* v. *Enwright*, 214 Mass. 507. See *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 207; *Agawam Co.* v. *Jordan*, 7 Wall. 583, 602.

It is also true, as decided by these and other cases, that equity will enjoin interference with the right of a manufacturer to his own trade secrets and will prevent continuance of violation of duty by a former employee in divulging them, and will give relief in damages for injury already inflicted. There is a plain distinction between instances where employees leave one employer and use their own faculties, skill and experience in the establishment of an independent business or in the service of another, and instances where they use confidential information secured solely through their employment to the harm of their previous employer.

The plaintiffs have clear ground for relief against their former employees, Fatherson and Wachtel. The former, at least, has appropriated the Aronson idea for improvement in dress design acquired solely through his employment. The latter participated in, if he did not frame, the scheme whereby Orlov was to embark in the business of manufacturing petticoats in competition with the plaintiffs by the use of the information which he and Fatherson had acquired wholly through their employment by the plaintiffs. Orlov in this respect stands no better than the other two defendants. The Aronson idea was communicated to him by one or both of his co-defendants. At the first meeting of the three, the previous employment and experience of Fatherson with the plaintiffs formed the subject of the conference. Orlov and Wachtel were well acquainted. The inference is irresistible that one of his dominating motives in forming the arrangement with the other two was the knowledge that there would be at his disposal the Aronson idea of garment design. Under these circum-

stances he is on the same footing and subject to the same liabilities as Wachtel and Fatherson. *Morison* v. *Moat,* 9 Hare, 241, 263.

It is contended that the subject matter of this suit is within the exclusive jurisdiction of the federal courts and that, therefore, the State court is without jurisdiction. That contention rests upon the theory that the case arises under the patent laws of the United States. By the Constitution and laws of the United States exclusive jurisdiction "of all cases arising under the patent right, or copyright laws of the United States" is vested in the courts of the United States. U. S. Const. art. 1, § 8. The Judicial Code, approved March 3, 1911, c. 231, § 256. 36 U. S. Sts. at Large, 1161. The question presented is whether the present suit is "a cause arising under the patent right, or copyright laws." The meaning of these words has been settled by numerous decisions. It was said in *Pratt* v. *Paris Gas Light & Coke Co.* 168 U. S. 255, 259: "There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading — be it a bill, complaint or declaration — sets up a right under the patent laws as ground for a recovery. Of such the State courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the State tribunals." This statement has been cited with approval frequently. *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.* 185 U. S. 282, 286. *Minnesota* v. *Northern Securities Co.* 194 U. S. 48, 64. Suits, although involving the patent laws of the United States, are not cases under the patent laws "where they do not turn on a controversy between the parties in regard to the operation of" such laws on the facts. *Bankers Mutual Casualty Co.* v. *Minneapolis, St. Paul & Sault Sainte Marie Railway,* 192 U. S. 371, 384. Said Mr. Justice Lurton in *Henry* v. *A. B. Dick Co.* 224 U. S. 1, at page 16: "The test of jurisdiction is this: Does the complainant ' set up some right, title or interest under the patent laws of the United States, or make it appear that some right or privilege will be defeated by one construction, or sustained by another, of those laws?'" It was said by Mr. Justice Gray in *David* v. *Park,* 103 Mass. 501, at page 503: "Questions of the existence, validity or construction of letters patent for inventions when arising collat-

erally in a suit in a State court, must be there tried and determined. *Nash* v. *Lull*, 102 Mass. 60." See also Blatchford, J., in *Merserole* v. *Libby*, 6 Blatchf. 356. Questions respecting patents, when they arise as an incident to litigation pending in State courts, and when not brought directly for the infringement of a patent or to declare a patent void, are within the cognizance of the State court. They have been considered often by this court and by other courts. *Binney* v. *Annan*, 107 Mass. 94. *Carleton* v. *Bird*, 94 Maine, 182. *Dunbar* v. *Marder*, 13 N. H. 311. *Rice* v. *Garnhart*, 34 Wis. 453, 462. *Green* v. *Wilson*, 6 C. E. Green, 211. *Myers* v. *Turner*, 17 Ill. 179. See *Allen* v. *Riley*, 203 U. S. 347.

There is no averment in the plaintiffs' bill that either they or the defendants are the owners of a patent or that any patent touching the flexible skirt has been issued to anybody. The utmost extent of any allegation is that an application for a patent has been filed by H. Aronson, whose rights have been assigned to the plaintiffs, and "that said application is still pending in said Patent Office." The bill also alleges that an application for a patent for the same invention has been filed by Fatherson or Wachtel and assigned to Orlov, and that said application also is still pending. No one of the answers of the defendants sets up a claim to any patent right or avers that a patent respecting the subject has been issued to anyone. On the contrary, they filed several answers and each specifically denied the averments of the bill respecting any application for a patent by him.

No rights exist under a patent until a patent has been granted. It has been decided repeatedly that there can be no recovery in the ordinary case for use of a patented article made before the patent was granted. The inventor has no exclusive right before a patent has been issued to him. The patent is not retroactive to a date prior to the grant. The establishment of the monopoly does not antedate the grant of the patent. That grant is fixed as of its date. *Kirk* v. *United States*, 163 U. S. 49, 55. *Gayler* v. *Wilder*, 10 How. 477, 493. *Marsh* v. *Nichols, Shepard & Co.* 128 U. S. 605, 612. *Brown* v. *Duchesne*, 19 How. 183, 195. *Sargent* v. *Seagrave*, 2 Curt. 553, 555. The grant of a patent cannot be antedated. It takes effect as of the date when actually issued, and not before. *Marsh* v. *Nichols, Shepard & Co.* 128 U. S. 605, 616. It is, it seems to us, an unavoidable result from this prin-

ciple that prior to the issuance of a patent no case can arise under the patent laws respecting the relative rights of parties to or under a patent.

The gravamen of the plaintiffs' complaint is that certain information gained confidentially by two of the defendants while in their employ has been wrongfully communicated to the third defendant with full knowledge on his part of all the circumstances, so that his knowledge is tainted with the same infirmities that affect his co-defendants, and that the three have wrongfully used that knowledge to the plaintiff's harm.

The case at bar in our opinion does not arise "under the patent laws" of the United States. The plaintiffs do not rest upon any right secured by the patent laws, and they do not assail any monopoly conferred upon the defendants by such laws. Every reference to the application for a patent and to the patent laws might be stricken from the bill, and every fact respecting that subject might be eliminated from the master's report, without affecting or impairing the fundamental rights upon which the plaintiffs' case rests. On the other hand, giving full effect to every allegation in the bill touching patents and to every fact found by the master relative to that subject, involves no right arising under the patent laws. Even when a patent has been granted, business transactions entered upon and executed before the patent was granted are not ordinarily affected. Concededly, no patent was granted to anybody for anything respecting this subject until long after this suit was instituted. The question which the plaintiffs are seeking to have settled in this cause is not their right to a patent but their right to be protected from unlawful trade interference. The circumstance that priority of conception of an idea, which may or may not involve a patentable invention, was incidentally involved on one aspect of that unlawful interference, renders the subject of the patent laws of the United States, if a patent ever should be granted, collateral and incidental to a cause over which the State courts have jurisdiction.

This suit is not brought to determine the priority of an invention, and hence the right to a patent. It is brought to prevent the unlawful use of information, which may relate in part to an invention about the patentability of which there is contention, which has been obtained under such confidential circumstances that it

ought not to be used to their harm.  See *Agawam Co.* v. *Jordan,*
7 Wall. 583, 602.  Therefore, the statement of the Circuit Court
judge in *Standard Scale & Foundry Co.* v. *McDonald,* 127 Fed.
Rep. 709, 710, that "it never was the mind of Congress that the
inventor, without complying with the statutory scheme of sub-
mitting his claim to the Patent Office for its action thereon could
go into a United States Court in the first instance, to have de-
termined the question of his right to a patent," has no application
to the facts here disclosed.

The plaintiffs' ground for relief seems far more remote from the
patent laws of the United States than actions on notes given for
patents where the voidness of the patent, *Dickinson* v. *Hall,* 14
Pick. 217, its invalidity because of fraudulent procurement, *Bliss*
v. *Negus,* 8 Mass. 46, its want of utility, *Bierce* v. *Stocking,* 11
Gray, 174, and its utter worthlessness, *Lester* v. *Palmer,* 4 Allen,
145, have been considered as defences and directly adjudicated
by this court.  All of these cases were cited with approval in *Pratt*
v. *Paris Gas Light & Coke Co.* 168 U. S. 255, 260, 261, together
with an amplitude of other authorities showing the wide scope
of jurisdiction rightly taken by State courts of questions involv-
ing incidentally the validity of patents when the action was not
brought directly and chiefly for infringement or to test the
validity of a patent.

There would be, upon the strength of these authorities, ground
for the contention that a suit in equity by the inventor of a useful
mechanism, while his application for a patent was pending under
the laws of the United States and not yet granted, might in ap-
propriate instances seek and obtain an injunction in the State
courts against one who was pirating the invention under circum-
stances which warranted the inference of a threat to use it after
a patent should be granted.  *Brill* v. *St. Louis Car Co.* 80 Fed.
Rep. 909.  But the plaintiffs' case does not rest upon that ground.

The exceptions to the master's report were overruled rightly.
Many of them relate to findings of fact and refusals to make
findings of fact.  The evidence is not reported and hence no error
is shown in this respect.  The master was not required under the
rule to report the evidence and it would have been irregular for
him to do so without an order to that effect.  *Mathews* v. *Colburn,*
215 Mass. 571.

The allowance of the amendments to their answers requested by the defendants was in the discretion of the judge. There is nothing to indicate there was an abuse of discretion in denying the motion to amend the answer by setting out that the defendants' application for a patent was pending until October 23, 1914, when it was divided and a divisional application filed covering a part of the original claim, which was granted to the defendant Fatherson and one Hogan on January 19, 1915. This motion was presented after the master's report was filed. For the reasons already pointed out the fact here averred, if true, would not divest the court of jurisdiction. It does not appear that this would affect the rights of the plaintiffs or defendants as to the matters here in issue. But whether they would or not, would not be decisive. The earlier pleadings of defendants and their answers to interrogatories had manifested a purpose to deny or conceal the facts about their application, or that of either of them alone or with another, for a patent. It was discretionary with the court whether to allow this amendment.

The amendment to the answer setting up complete remedy at law came after the hearing by the master and was disallowed rightly. If there ever was anything in this point, it had been waived by going to trial before the master. *Bauer* v. *International Waste Co.* 201 Mass. 197, 201.

The question of exclusive jurisdiction in the Federal courts has been considered, *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank*, 196 Mass. 458, 462, *Fore River Shipbuilding Co.* v. *Hagg*, 219 U. S. 175, and the disallowance of the motion to amend in this regard has not harmed the defendants. It was denied rightly as matter of law.

Since it seems to have been conceded that the change in fashion has rendered the elastic petticoat, and hence the Aronson idea appropriated by the defendants, of little present value, no injunctive relief need be granted.

But the plaintiffs are entitled to the damages found by the master in the sum of $5,692.67. Jurisdiction in equity will be retained for this purpose. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 47. It is expressly found that the threatening letters were sent out to the trade throughout the country by the defendants "with the deliberate purpose of injuring the plain-

tiffs' sales." In essence they were founded upon a definite conception wrongly obtained from the plaintiffs. They were sent to numerous persons who already had contracts with the plaintiffs. They were couched in such phrases that they naturally would disturb and alarm, if not intimidate, these customers of the plaintiffs into breaking their contracts. While these letters stated truly that patents had been applied for, they also contained the implication that the defendant Orlov had present rights in the nature of patent rights. They naturally would produce the impression that he had exclusive rights under the patent laws. By the assertion of the present right to collect damages, he was going beyond any possible claim that he could have if he were a genuine inventor and certain in due course to secure the patent. The letters were in this respect at least untruthful in their implications. There is ground for the contention that they went quite beyond that point. The letters are calculated to accomplish the harm which the master finds they were intended to cause. The owner of a patent already issued may notify infringers and warn of his intent to protect his rights, if he acts in good faith. *Virtue* v. *Creamery Package Manuf. Co.* 102 C. C. A. 413, 418. But even an owner of a patent cannot attack a rival in business in bad faith and by threatening letters seek to intimidate his customers and coerce that rival to yield to unjustifiable demands. *A. B. Farquhar Co. Ltd.* v. *National Harrow Co.* 42 C. C. A. 600. *Adriance, Platt & Co.* v. *National Harrow Co.* 58 C. C. A. 163. One design of the defendants' conduct was to induce customers of the plaintiffs to break their contracts with them, a design which on the findings of the master was fulfilled in numerous instances. This branch of the case is covered by *American Stay Co.* v. *Delaney*, 211 Mass. 229, *Essex Trust Co.* v. *Enwright*, 214 Mass. 507, *Beekman* v. *Marsters*, 195 Mass. 205, and *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470, 479. The cases of *Boston Diatite Co.* v. *Florence Manuf. Co.* 114 Mass. 69, and *Whitehead* v. *Kitson*, 119 Mass. 484, are distinguishable. They both were decided on demurrer and not upon questions raised after a voluntary hearing before a master, they did not relate to a betrayal of trade secrets, and they arose before this court had complete equity jurisdiction. The circumstances of the case at bar distinguish it from *Raymond* v. *Russell*, 143 Mass. 295, and *Finnish Temperance Society Sovittaja*

v. *Raivaaja Publishing Co.* 219 Mass. 28, because in those cases no breach of trust or of contract was involved. The plaintiffs are entitled also to interest upon the amount found by the master from the date of his report. R. L. c. 177, § 8. *Hawkes v. Lackey,* 207 Mass. 424, 434.

There is nothing else in the exceptions or arguments of the defendants which needs to be noticed in detail. The interlocutory decrees are affirmed. Final decree is to be entered for the plaintiffs in accordance with this opinion, for the amount of damages found by the master, and interest, with costs. The details may be fixed in the Superior Court.

*So ordered.*