THOMAS EDWARDS *vs.* BUFFALO SPECIALTY COMPANY.

Suffolk.     December 2, 1918. — January 9, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Unlawful Interference.     Patent.*

The owner of a "combination patent," covering the use of a free flowing gummy liquid within a pneumatic tire for the purpose of sealing punctures automatically, widely advertised his ownership, gave notice thereof to users of such a substance, threatened suits for infringement for violation of his patent rights and in many instances brought such suits, sending notice to other dealers. His agent, and later his attorney, interviewed a manufacturer of a competing article and stated to him that he was infringing upon the patent. The manufacturer explained that he long had been manufacturing his article and that he had a right to do so and in substance told the owner of the patent to proceed with a suit if he wished. The owner of the patent then notified customers of the manufacturer and dealers in his product that they were infringing upon the patent and brought at least one suit for infringement against one dealer in the manufacturer's article. Of this suit the manufacturer knew and he had a right and an opportunity to intervene therein, but he did not do so. The owner of the patent brought no suit for infringement directly against the manufacturer. As a result of his campaign, the owner of the patent induced customers of the manufacturer to make with him agreements to sell only his patented article, he purchasing all of the manufacturer's product which they had and agreeing to forbear from bringing or prosecuting against them suits for infringement of his patent. By reason of this conduct sales of the manufacturer's product diminished until they amounted practically to nothing. The manufacturer brought an action of tort against the owner of the patent for unlawful interference with his business, in which it was *held,* that a verdict for the plaintiff was not warranted

because the conduct of the defendant, above described, would not warrant a finding of a malevolent motive in the defendant to harm the plaintiff through destruction of his business.

TORT for alleged unlawful interference by the defendant with the business of the plaintiff. Writ dated April 30, 1907.

In the Superior Court the action first was tried before *Callahan*, J. The material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict in its favor be ordered. The motion was denied. The jury found for the plaintiff in the sum of $5,500; and the defendant alleged exceptions.

Thereafter, upon a motion of the defendant that the verdict be set aside as excessive, the judge ordered that, unless the plaintiff remitted all of the verdict in excess of $3,000, the verdict should be set aside and a new trial be had, limited to the question of damages. The plaintiff refusing to comply with that condition, the verdict was set aside and the case was tried again, upon the question of damages only, before *King*, J. Certain rulings asked for by the defendant were refused and there was a verdict for the plaintiff in the sum of $3,000; and the defendant alleged exceptions.

*G. C. Coit*, for the defendant.

*W. B. Grant*, for the plaintiff.

PIERCE, J. This is an action of tort, brought by the plaintiff in 1907 against the defendant to recover for damages alleged to have been sustained by the plaintiff, in his business of selling to wholesale customers a varnish called "Varnish No. 25," by reason of the defendant's unfair competition and malicious interference with that business. At the close of the evidence a motion was made that a verdict be ordered for the defendant. The motion was denied and the defendant duly excepted.

The evidence discloses that the plaintiff since 1898 had manufactured and sold, under different labels, a varnish, in 1907 called "Varnish No. 25." "It was manufactured by a secret process, was a varnish in its nature, composed of ingredients in such a way that it was free-flowing and reasonably quick-drying . . . it was commonly used to inject into tires of a bicycle to fill pores or small punctures in the rubber bicycle tires, and was manufactured by the plaintiff for that purpose."

The defendant in 1898, by an assignment, became the owner

of a "combination patent" issued in March, 1897, to Charles E. Duryea upon his application filed December 28, 1891. This patent covered the use of a free flowing gummy liquid within a pneumatic tire for the purpose of automatically sealing punctures. At the time of the purchase of the patent by the defendant, there were several compounds similar to that of the plaintiff being manufactured and sold in different parts of the country; and the defendant immediately began an active campaign to force the discontinuance of the manufacture and sale of them, claiming that its patent granted to it the exclusive right to use any liquid or powder inside a hollow pneumatic-vehicle tire for the purpose of sealing punctures or cuts. The defendant was the sole owner of the letters patent at all times during the acts complained of, and had not granted licenses to manufacture or sell to any others, except one corporation in Indiana which was in no manner connected with the business of the plaintiff.

The method of the defendant in securing the discontinuance of the manufacture and sale of the other compounds was to send notices to all dealers and repair shops throughout the country, advising them of the fact that it owned the Duryea patent, of which it enclosed copies, and warning them that the manufacture or use of any article for the purpose of sealing punctures or cuts in pneumatic tires in the manner described by the claims of the Duryea patent, other than the preparation manufactured and sold by the defendant, and known as "Neverleak," was an infringement of the defendant's rights under its patent; and notifying the trade that unless the manufacture or use of all such tire fluids for the said purpose was discontinued the defendant would where possible secure evidence and bring suits for infringement. In many instances the defendant brought suits in the United States courts to restrain manufacturers and dealers, and notices of the suits were sent to other dealers. No evidence was offered to prove that the statements of fact made by the defendant were not in substance true.

In 1905 the defendant sent its sales manager to the place of business of the plaintiff. The agent stated the claims of the defendant in regard to the patent, and notified the plaintiff that his compound was an infringement thereof. The plaintiff replied that he had always made use of such devices as putting a fluid

inside a hollow object from the time of his apprenticeship in 1861; that the patent, so far as he was concerned, did not interest him at all, because he had always used such "devices from thirty years previously;" and that he had a perfect right to use them, and the defendant could sue him or not as he pleased. As the representative was going out, the plaintiff said: "Mr. Brown, I have enjoyed your visit very much, but if you bring suit, I shall make it very interesting to you." The year following, 1906, the plaintiff met the general counsel for the defendant. They had a conversation relating to the defendant's "Neverleak," and the attorney told the plaintiff that it was the only fluid that could be used lawfully, and that the plaintiff was an infringer in making and selling "Varnish No. 25." The plaintiff told the attorney that he had used this device for thirty years previous to that time and had a perfect right to use it; and told him in general how he had used it; and that he could bring suit if he wanted to; that he had a perfect right to do what he was doing. Between the first interview in 1905 and the bringing of this action in 1907, from time to time the defendant sent letters and circulars to the trade and to some of the customers of the plaintiff, to the effect that unless they discontinued using or selling "Varnish No. 25" for use in pneumatic tires suits would be brought against them for infringement. Agents of the defendant called personally upon customers of the plaintiff and stated to them substantially the same things as had been stated in the letters. In at least one instance a suit was begun against a dealer alleging that the use of "Varnish No. 25" by him was an infringement; and in a circular letter sent generally to the trade, it was stated that the suit had been brought to restrain the dealer from using "Varnish No. 25."

It was agreed by counsel that the plaintiff had notice of the suit from the dealer and defendant in that action before the present action was brought, and that he did not get any information directly from the defendant except as it was obtained from a mimeographed letter of the defendant, which was addressed, mailed and delivered to the plaintiff. It was further agreed by counsel that the plaintiff had a right to petition to intervene in the suit against its customer, and to try out in that case the question of the validity of the Duryea patent.

As a result of the several suits, and the circulars and letters, the

defendant secured agreements with dealers who had theretofore sold "Varnish No. 25" that thereafter they would sell only "Never-leak" for use in pneumatic tires; and the defendant bought from such dealers all of the "Varnish No. 25" which they had in stock, promising, in consideration of the agreement to sell only "Never-leak," it would forbear bringing suit for infringement. As a further result of the defendant's campaign, many of the dealers who had been customers of the plaintiff ceased to buy his "Varnish No. 25," and his sales thereof grew smaller until they amounted to practically nothing.

The plaintiff admits that the defendant in good faith has the right as the owner of the Duryea patent to protect the rights granted by the patent, by suits against alleged infringers or by circulars or letters warning the trade and individuals of his intention to protect his rights, *Aronson* v. *Orlov,* 228 Mass. 1; but contends that the failure of the defendant, after the plaintiff had denied his right under the patent to interfere with the business of the plaintiff for about two years, to sue the plaintiff, (who was financially responsible) rather than a customer of the plaintiff in another jurisdiction, when such failure to take action is considered in connection with the fact that during the same period the defendant sent to the trade and to customers of the plaintiff letters, circulars and envelopes which exaggerated the facts by the arrangement of head lines, the subject matter and the typographical form, would warrant the jury in finding that the defendant did not act in good faith with an honest intent to protect his rights as he understood them; but did act in bad faith with a malevolent motive to injure the plaintiff through the destruction of the plaintiff's business. *Aronson* v. *Orlov, supra.*

Under all the circumstances, the failure to sue and the publication of the letters, circulars and envelopes were consistent with the good faith of the defendant in the exercise of an intent to protect his business, and would not warrant a jury in finding a malevolent motive to harm the plaintiff through the destruction of his business. It follows, that the motion that a verdict be ordered for the defendant should have been allowed, and that judgment should now be entered for the defendant under St. 1909, c. 236, § 1.

*So ordered.*