**E. J. BROOKS CO. v. KLEIN.**
**No. 7241.**

Circuit Court of Appeals, Third Circuit.
Sept. 17, 1940.

Axel V. Becken, of New York City, for appellant.

Oscar W. Jeffery and J. Stanley Preston, both of New York City (Charles Fredericks, of New York City, of counsel), for appellee.

Before MARIS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

This is a suit for the alleged infringement of a patent, being United States No. 1,789,-236, issued to Klein and Kasanof on January 13, 1931, and thereafter assigned to Klein, the plaintiff-appellee herein.

The subject of the patent is a seal consisting of a small metal device for fastening the cord of a pendent price tag to clothing or garments so that the tag may not be removed surreptitiously without mutilating the cord, the garment or the seal. Seals which serve the purpose described are useful to retail merchants who do business on a large scale and, especially, in stores which are operated on the principle of self-service where customary sales people are dispensed with. The seal serves to protect the seller against the unauthorized removal or substitution of price tags while the articles are yet in the store before sale and, elsewhere, until the customer's final acceptance of the purchase. It is essential that the seal be inexpensive to manufacture, easy to adjust to the price tag cord and effective as a guard against tampering.

The patent in suit calls for a seal stamped from a single piece of light metal into two jaws or shells, the one telescopable into the other and joined by a narrow strip of metal which serves as a hinge in the manner of a bivalve. The jaws are correspondingly tapered toward the hinge end so that when they are closed, after being pressed together with the hinge as an axis, the seal has a wedge-shaped conformation with the thin edge at the hinge or folded strip. On the inside of each of the jaws at the end opposite the hinge, there are lateral flanges which, by interacting one with the other when the jaws are pressed together, lock automatically. The flanges slip past each other under tension and, when they have overlapped, their own spring

action causes them to hook together. The knot tying the ends of the cord by which the tag is suspended is placed between the open jaws and rests within the chamber formed by the jaws when closed, the looped cord passing out of the seal at either side of the hinge which firmly grips the cord. The patent in suit (herein referred to as the Klein patent) allows three claims of invention, each of which the plaintiff charges the defendant with infringing.

The defendant's alleged infringing structure is a seal made in accordance with a later patent, being United States No. 1,982,-783, issued to one W. M. Brooks. Under the Brooks patent the seal is also stamped from a single piece of metal into two jaws, the one telescopable into the other and both joined by a narrow strip of the metal which acts as a hinge when the jaws are pressed together for their closed position. Each jaw is slightly curved concavely with relation to their being pressed together, so that when the jaws are closed the seal presents a thin edge at either end and the sides of the closed seal have an ovoid or elliptical shape. The knot tying the two ends of the tag cord rests in the chamber formed by the closed jaws and the cord passes out of the seal at either side of the hinge. The locking engagement of the jaws in the defendant's structure is accomplished by friction. At the free end of one of the jaws is a projection or tongue which curves inwardly toward the jaw. The sides of the other jaw at its free end are slightly indented to form a groove or slot into which the curved tongue at the end of the other jaw fits when the two jaws are pressed together. In the latter operation, the curved tongue, which is frangible, conforms itself to the inside of the top of the slotted jaw.

The court below held that each of the three claims of the Klein patent is valid and that each is infringed by the defendant's seal. In so holding, the court below expressly based its action on the decision of the Circuit Court of Appeals for the Second Circuit in Klein v. American Casting & Mfg. Corp., 87 F.2d 291. The court also referred to the opinion of this court in International Seal & Knot Protector Co. v. E. J. Brooks Co., 98 F.2d 647, where, as the court below conceived, the patent now in suit was considered. However, the Klein patent was considered in the International Seal case, supra, only to the extent that it evidenced anticipation of the patent there involved (Keidel patent, United States No.

1,783,938) whose invalidity, as found by the District Court in that case, this court was then affirming. It would indeed be going far beyond the competent intendment of the decision in the International Seal case, supra, to say that this court had, even impliedly, there sustained the Klein patent. Aerovox Corp. v. Cornell-Dubilier Corp., 2 Cir., 108 F.2d 749, 752. The Klein patent was not in suit in the International Seal case and its validity was therefore not passed upon either directly or indirectly. It served merely as an exemplification of the prior art, as did also another patent (Behrman Patent, United States No. 1,791,342).

In view of the prior art, it is very slight invention, if any, that the Klein patent presents. A seal stamped from a single piece of metal into two shells or jaws joined by a narrow integral strip, which also acts as a hinge in the rotation of the jaws to a closed position where they are automatically locked by spring action of tangential parts, had long been known when the Klein patent was applied for. The Bell patent, United States No. 1,160,034, issued in 1915 and the British patent to Fusa (No. 9,285 of 1910) both embodied that principle. Klein's effort, therefore, could, at best, be little more than mechanical adjustment or change in the application of the art priorly disclosed. Nor is there any evidence in the case that the Bell and Fusa patents were found wanting or that they could not, readily and economically, have been made useful and serviceable.

So far as the Klein patent indicates, Bell and Fusa had left little, if anything, for Klein's discovery. In such circumstances, any possible invention in the Klein patent could represent at most no more than improvement upon the prior art. It was, therefore, peculiarly incumbent upon Klein as a patent applicant to state plainly and specifically what he claimed to be new and to be his invention. General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 368, 369, 58 S.Ct. 899, 82 L.Ed. 1402. This brings us to a consideration of the claims upon which Klein relies.

Claim 1 reads as follows: "A seal for a tie member comprising a pair of tapering jaws hinged together at their tapered ends and forming complementary telscopable portions of a chamber when brought together with the portions of the jaw adjacent the hinge in close association, the jaws being adapted to receive the tie member between them when open and to clamp said

member along the lines of the hinge and between the adjacent portions of the jaws, and means within said chamber for automatically locking the jaws together in an inseparable manner."

Claim 2 follows Claim 1 substantially and adds that the "means * * * for automatically locking the jaws together", etc., are also "for holding the portions adjacent the hinge in a grasping relation to the string therebetween, said means being inaccessible against manipulation when the jaws are brought to their predetermined locked position". Claim 3 describes the construction of the seal in detail in accordance with the prescriptions of Claims 1 and 2. It is the taper of the jaws and the internal means for locking the jaws together and holding the portions adjacent to the hinge in a grasping relation to the cord, as described in Claims 1 and 2, upon which Klein bases his asserted invention.

■■■ While the claims call for "tapered" or "tapering" jaws, no reference is made to "taper" in the specifications which describe the jaws as being "triangular" or "substantially triangular" in shape on their sides. As the claims are to be read in the light of the specifications (Henry v. City of Los Angeles, 9 Cir., 255 F. 769, 780), the taper referred to in the claims can be related only to the triangular shape of the sides of the jaws as described by the specifications. Other than that, the taper referred to in the claims lacks identification. But, even as thus harmonized, neither the specifications nor the claims ascribe any utility or essential purpose to the taper or to the triangular shape of the jaws. In fact, the inclusion of the taper of the jaws in the claims of the patent was an afterthought which was added by amendment during the prosecution of the patent application while in the Patent Office. The hinge of the Bell seal tapered and, necessarily so, as a matter of mechanical construction because of the relation of the hinge to the jaws of which it was an integral part. The taper mentioned in the claims of the Klein patent represent no more than mechanical adaptation of the shape of the jaws to the necessary taper of the hinge as it proceeded from its fold to the ends of the jaws. No invention was involved therein over what the Bell patent had disclosed. The same may be said for the grasp of the hinge on the cord and the placing of the tie member in the chamber formed by the closed jaws. As to the means within the chamber for automatically locking the jaws together, the Fusa patent had disclosed such means, as had also the German patent (No. 289,235) issued to Merz in 1915. We are, therefore, of the opinion that the Klein patent fails to disclose invention and that each of the claims of the patent in suit is invalid as lacking in invention and as being anticipated by the prior art.

■■■ The appellee stresses the fact that the court below found that there is no evidence that the Bell seal had ever been tried commercially. Even so, reduction to use does not necessarily require a commercial use. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 384, 48 S.Ct. 380, 72 L.Ed. 610. Furthermore, it is not the validity of the Bell patent that is here involved, but merely the anticipation which that patent's disclosure constituted. Even if the Bell patent was never more than a paper patent, it may serve none the less as anticipation, disclosing, as it does, an apparatus giving the result which the Klein patent gives. Atlantic Refining Co. v. James B. Berry Sons Co., Inc., 3 Cir., 106 F.2d 644, 654.

■■■ The commercial success which Klein claims for his seals is not even conclusive of his seal's utility,—"much less its patentable novelty". McClain v. Ortmayer, 141 U.S. 419, 429, 12 S.Ct. 76, 79, 35 L.Ed. 800. In addition to owning the patent in suit, Klein conducts a large self-service store. Point is accordingly made of the fact that he sells millions of garments a year to which price tags are attached by his seals. It does not follow, however, that the use which Klein is thus enabled to make of his seals through his extensive sale of garments is in any way due to the novelty or utility of his seals. Prior to the advent of Klein's seal, his sale of garments was likewise extensive and it is a matter of record that he continued to use a different seal in his store for almost a year and a half after devising the seal which is the subject of the patent in suit. It is also a fact that the Klein commercial seal is not the seal actually described in the Klein patent. The interlocking internal flanges in the Klein commercial seal are on the sides of the jaws, as in the Behrman patent, and not on the ends opposite the hinge, as called for by the Klein patent. In any event, Klein's commercial success as a seller of garments to which price tags are attached by his seals fails to prove the commercial success

958

of his seals. But, even if Klein were able to claim commercial success for his seals, it is only when invention is in doubt that the commercial success of a patent may turn the scale in the patentee's favor. Smith, Executor v. Hall, et al., 301 U.S. 216, 233, 57 S.Ct. 711, 81 L.Ed. 1049; Paramount Publix Corp. v. American Tri-Ergon Corp., Inc., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L. Ed. 997; DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 685, 51 S.Ct. 563, 75 L.Ed. 1339. We do not believe such doubt exists under the present record.

We wish to point out that the instant case presents marked and material differences over what was before the court in the case of Klein v. American Casting & Mfg. Corp., supra. Specimens of the Bell seal, which did not depart in any material particular from the teachings of the Bell patent (R. p. 275), were specially struck for use at the trial of the present suit where they were offered and received in evidence. These specimen Bell seals demonstrated practically that the knot of the tie cord could be placed in the chamber or housing formed by the closed jaws of the seal, and the court below properly so found in direct contrast to the finding in the American Casting case. Likewise, as to the relative security of the Bell seal against tampering, the plaintiff's expert in the present case went no further than to express the opinion that "theoretically, the exposed type [i. e., the overlapping circular flanges] of the Bell would be easier to get out." He admitted, however, that he had never tried to open the Bell seal in practice, although specimens of that seal were then available to him for such experimentation. On the other hand, a closed Klein seal was opened and reclosed at the trial without apparent mutilation as noted by the trial judge on the envelope containing that particular exhibit. Further pointing the contrast, the court below in the instant suit found that there was no evidence that, during the trial of the American Casting case, "any attempt was made by the defendant to show that the plaintiff's [Klein's] seal could, while leaving no trace of tampering, be reopened and closed by a skillful person." It thus clearly appears that the findings in the American Casting case which there prompted the rejection of Bell's disclosure as anticipation, differed materially from the findings in the present case.

Being of the opinion that the claims of the Klein patent are invalid, it is unneces-

sary for us to consider the charges of infringement made against the defendant's seal, the jaws of which are curved and not triangular in shape, whose appearance, when the jaws are closed, is ovoid or elliptical and not wedge-shaped or tapered, and whose means for holding the jaws together are frictional and not spring action of interlocking internal parts.

The decree of the court below is reversed and the record remanded for the entry of a decree dismissing the plaintiff's complaint.