## ZEPHYR AMERICAN CORPORATION v. BATES MFG. CO. et al.

### No. 7843.

Circuit Court of Appeals, Third Circuit.

Argued November 21, 1941.

Decided May 15, 1942.

382

Samuel E. Darby, Jr., of New York City, and Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Donald J. Overocker, of New York City, of counsel), for appellant.

Newton A. Burgess, of New York City (Gifford, Scull & Burgess, of New York City, on the brief), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The plaintiff, Zephyr American Corporation (hereinafter referred to as "Zephyr"), brought the instant suit under the Declaratory Judgments Act[1] against the Bates Manufacturing Company (hereinafter referred to as "Bates") and one Edmund W. A. Peter, charging them with unfair competition and seeking an injunction restraining the alleged unfair practices, an accounting for the damages Zephyr claims to have suffered as the result of such practices and an adjudication with respect to the validity and infringement of two patents (Drucker Patent No. 1,895,409 and Peter Patent No. 2,115,537), in connection wherewith the alleged unfair competition was carried on by the defendants. Bates is the owner of the Drucker patent and the exclusive licensee of the Peter patent, whereof Peter is the record title owner. Jurisdiction of the suit is made to depend upon the diversity of citizenship of the parties

---

[1] Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400.

and the amount in controversy. The matters of patent validity and infringement, it will be noted, are involved because of their bearing upon or relation to the unfair competition alleged.

In their answer, the defendants counterclaimed, charging Zephyr with infringement of the two patents by a device known as the "Autodex," which admittedly was manufactured and sold by Zephyr. The defendants sought damages against the plaintiff for the infringement charged and an injunction against such infringment in the future.

After a trial on the merits, the court below denied the plaintiff any relief and sustained the defendants' counterclaim, holding that the Drucker and Peter patents were valid and infringed by the plaintiff and awarding Bates damages by reason thereof and an injunction restraining Zephyr from future infringements or violations of the defendants' rights under the patents. From the judgment entered, the plaintiff took the present appeal. As the plaintiff's charge of unfair competition necessarily calls for a determination as to the validity, and the plaintiff's infringement, of the Drucker and Peter patents, we proceed immediately to a consideration of the latter matters.

The devices covered by the defendants' patents are desk indices, or list finders, for ready reference in locating names, addresses and telephone numbers or other data catalogued alphabetically. In 1923, Bates had put upon the market a rotary telephone index which met with considerable commercial success. In 1936, Peter contacted Bates with a view to interesting the latter in what Peter considered a superior device for somewhat similar uses. An agreement was entered into by Bates and Peter respecting the latter's conception and an application for a patent of the Peter device was filed. In the prosecution of this patent application it was discovered that the Peter device might infringe the patent which had been granted to Drucker in 1933. Bates thereupon bought the Drucker patent (No. 1,895,409) and proceeded with the Peter application whereon the patent (No. 2,115,537) was granted in 1938. Thereafter Bates manufactured and sold what it called the "Bates List Finder" based on the Peter patent.

The plaintiff challenges both the Drucker and Peter patents on the ground that they were anticipated by the prior art and, therefore, are lacking in invention. For an understanding of the prior art in relation to the Peter patent, it seems unnecessary to go back of Drucker. The latter's patent consists of sheets of paper piled one upon another in a horizontal position within a casing having a hinged cover top. To the end of the cover, opposite the hinged end, there is attached an adjustable gripping member which can be moved on a horizontal slide. The loose outer, or bottom, edges of the sheets are cut so as to form tabs which overlap. When the gripping member is moved backwards or forwards on the slide to a desired point, as selected on an alphabetical index, it engages only the corresponding portion of the sheets to be lifted. Depending, therefore, upon the position of the gripping member, as so determined by the operator, the required number of the sheets can be lifted, when the cover is pulled up by hand, so as to expose to view the particular sheet desired for inspection. The cover can be held in an open or upward position by a stop, clamp, or other device.

In the Peter device the sheets or cards, piled one upon another, are mounted in a horizontal position within a container having a hinged cover top. The gripping member moves on a slide along one side of the cover on the cut side of the sheets or cards and under the tabs (left by the cutting) which overlap. At the hinged end of the container there is a coil spring so that when pressure on a button releases the catch which holds the cover in closed position, the cover is raised upright by the spring action.

It is plain that all that Peter did over Drucker was to place the gripping member and the tabs on the cards at the side of the container instead of the end and to provide the coil spring and release catch for opening the cover. The use of a release catch and coil spring for the intended purpose is old, having been used in many objects, such as in the jack-in-the-box of ancient origin. The utilization of an expedient common to many diverse arts, of itself, amounts to no more than the exercise of mechanical skill. No new use or service is ascribed to the coil spring and release catch as they are employed in the Peter patent. We think it is too clear to admit of any doubt that Peter was anticipated by Drucker and that his device lacks invention. The fact that Bates in pursuing the Peter application purchased

the Drucker patent upon learning of it because of a fear of infringement is at least evidentiary of a like recognition on the part of Bates. If Bates can point to invention at all in this case, it must necessarily be on the basis of the Drucker patent.

■ As evidencing the state of the art at the time of the Drucker patent, the plaintiff points to the disclosures made by the Shyer patent (No. 429,970) of 1890, the Hall patent (No. 467,131) of 1892, the Dickenson patent (No. 681,409) of 1901, and the Burgess patent (No. 753,849) of 1904. As has often been said, the presence or absence of patentable invention depends upon a question of fact. Thomson Spot Welder Co. v. Ford Motor Company, 265 U.S. 445, 446, 44 S.Ct. 533, 68 L.Ed. 1098; Radiator Specialty Co. v. Buhot, 3 Cir., 39 F.2d 373, 376; Walker on Patents, Deller's Ed., § 25. For the grant of a patent the statute requires that the alleged invention be new and useful. 35 U.S.C.A. § 31. In determining, therefore, whether there is patentable invention in any case, it is essential that the knowledge of the prior art be considered. Keystone Driller Co. v. Northwest Engineering Corp., 294 U.S. 42, 50, 55 S.Ct. 262, 79 L.Ed. 747; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 180, 181, 51 S.Ct. 95, 75 L.Ed. 278; New York Scaffolding Co. v. Liebel-Binney Construction Co., 254 U.S. 24, 31, 41 S.Ct. 18, 65 L.Ed. 112. Manifestly, what is already known to the art at the time of a patent application is peculiarly of material bearing on the question of the novelty of the alleged invention. We come then to what Drucker (and Peter, for that matter), at the time of entering the particular field, knew or could have known from the disclosures which had already been made by others.

The Shyer patent covers a series of cards or leaves mounted upright within a container, each card or leaf having a pin at its top. The pins on the respective cards or leaves are set at graduated distances for tabbing purposes. The pins lie behind a slotted latch against which they rest and which keeps the cards in their upright position. The latch is controlled by a knob or indicator on the outside of the container and can be moved so as to permit one or more of the pins in a series to come through the slots. When this is done and the door of the container is opened, the cards so released fall from the force of gravity, with the mounting of the cards at the bottom acting as an axis. The cards are returned to the upright position by hand. In the Hall patent the leaves or tablets are hinge-supported at their lower edges and are normally kept in an upright position by a confining appliance. This appliance, which is a finger shaped clip, may be moved across the top of the leaves or tablets on a runner bar. The leaves or tablets are cut to provide tabs which overlap so that as the clip moves across the tabs a desired portion of the leaves can be released from the confining appliance. When so released, they rotate from the force of gravity to a downward position. Like the Shyer patent, the leaves are returned to the upright position by hand. The Dickenson patent discloses a number of carriers of equal length mounted on an upwardly inclined base so that the cards overlap with the upper end of each carrier projecting above the upper end of the carrier in front of it. A holder or indicator may be moved through a slot cut in the edge of the container and by means of the indicator the desired number of the carriers can be released. When the door of the container is opened, the carriers so released are pulled down by the force of gravity to a horizontal position. In the Burgess patent there is a latch which is moved upward and back by hand until brought into the position desired. Then it is pushed down so that it engages the upright cards at a point thus relatively determined. By pulling the latch forward the cards so engaged within the latch are brought into horizontal position. The one end of the latch is fixed to the cover of the container.

■ From the description of the Drucker patent which we have already given, we believe it is evident that Drucker's idea was fully anticipated by the prior art, more particularly as disclosed by Hall and Burgess. In the Hall patent the overlapping tabs on the superimposed sheets are selected by a clip, while in the Drucker patent they are selected by the gripping member. In Hall, the clip confines, in an upright position, the sheets which are not intended to fall, while in Drucker, the gripping member carries the sheets, not desired for use, to an upright position. This reversal in the mode of operation is but an exercise of ordinary skill. The idea of a means to engage a number of sheets and to pull them away from others is disclosed by the

Burgess patent. The principle of selecting for separation a number of contiguous sheets by means of an indicator and then moving them away from their normal resting position by the use of a clip or gripping member operating against the tabs of the sheets is but a mechanical adaptation of the teachings of the prior art in a combination which produces no new result.

 Invention does not reside in mere skill. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005; Hansen v. Slick, 3 Cir., 230 F. 627, 632. As the Supreme Court said in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438,—"To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences." An aggregation of elements, old in the art, which does not bring about a new and useful result is not invention. Cuno Engineering Corporation v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. ——; Keystone Driller Company v. Northwest Engineering Corp., supra; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Company, supra, 282 U.S. at page 186, 51 S.Ct. 95, 75 L.Ed. 278; Grinnell Washing Machine Company v. E. E. Johnson Company, 247 U.S. 426, 432, 38 S.Ct. 547, 62 L.Ed. 1196; Richards v. Chase Elevator Company, 158 U.S. 299, 302, 15 S.Ct. 831, 39 L.Ed. 991; Reckendorfer v. Faber, 92 U.S. 347, 357, 23 L. Ed. 719. An aggregation of known elements and their uses (such as the Drucker; and Peter patents appear to be) is to be distinguished from "a new combination of the old ingredients, whereby a new and useful result is obtained". In the latter instance, there is invention. Leeds and Catlin Company v. Victor Talking Machine Company, 213 U.S. 301, 318, 29 S.Ct. 495, 53 L.Ed. 805; Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 542, 20 L.Ed. 33. But, even though the combination be useful, if it does not produce a new result, it is not invention. Concrete Appliances Company v. Gomery, 269 U.S. 177, 180, 46 S.Ct. 42, 70 L.Ed. 222.

 The fact that neither Drucker nor Peter knew of the disclosures of the prior patents is immaterial. Inventors are conclusively presumed to know the prior art, domestic or foreign, in clearly re-lated lines of endeavor. Bone v. Commissioners of Marion County, 251 U.S. 134, 144, 40 S.Ct. 96, 64 L.Ed. 188; Ottinger v. Ferro Stamping & Manufacturing Co., 6 Cir., 59 F.2d 640, 642. It is a prerequisite to patentability that the invention must not have been known or used by others in this country. R.S. § 4886, 35 U.S.C.A. § 31. Even the disclosure by a paper patent furnishes anticipation fatal to patentability. E. J. Brooks Co. v. Klein, 3 Cir., 114 F. 2d 955, 957. It is immaterial, on a question of anticipation by a prior device, whether is was ever put into commercial use or not. Collins v. Emerson, 1 Cir., 82 F.2d 197, 201. So long as it embodies the same construction and principle as the alleged invention, its disclosure in a publication is effective as anticipation even though its construction be crude or its operation imperfect. Sparks-Withington Co. v. Jay, 6 Cir., 270 F. 449, 452. In Dashiell v. Grosvenor, 162 U.S. 425, 432, 16 S.Ct. 805, 40 L.Ed. 1025, it was held that an inoperative device disclosed by a patent anticipates a later operative device if the former can be rendered operative by the exercise of ordinary mechanical skill. These rules, it seems to us, clearly refute the view of the learned trial judge that the prior "gadgets" did not anticipate Drucker and Peter because they were crude and had not achieved any commercial success.

 In adjudging the Drucker and Peter patents valid the learned court below attributed to the commercial success of the Bates List Finder an importance far out of proportion to its evidentiary role and materiality. As this court pointed out in E. J. Brooks Co. v. Klein, supra, 114 F.2d page 958, "it is only when invention is in doubt that the commercial success of a patent may turn the scale in the patentee's favor." Where, as here, the patented device so plainly lacks invention in the light of the prior art, commercial success is wholly incapable of supplying the requisite of novelty. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 470-474, 55 S.Ct. 449, 79 L.Ed. 997. The validity of a patent is not to be sustained merely because the patentee achieved commercial success with the patented device. Durand v. Bethlehem Steel Co., 3 Cir., 122 F.2d 321, 323.

With the invalidity of the Drucker and Peter patents thus established, the question of infringement automatically drops

out of the case. The court below in its opinion mistakenly assumed to pass upon and hold invalid the Pollock patent (No. 2,141,761) under which Zephyr manufactured and sold the "Autodex". That action unnecessarily transgressed the issues in the case, as the validity of the Pollock patent was not involved. That patent and the device manufactured and sold under it were in the case only as the objects of Bates' alleged unfair assault on Zephyr's business. The Pollock patent was in no respect relevant to the question of validity of the Drucker and Peter patents.

■■■ We come then to the plaintiff's further complaint and its prayer for an injunction and damages on account of the alleged unfair competition by Bates. As the case must go back for further hearing and findings with respect to the claim of unfair competition, particularly in view of our conclusion that the Drucker and Peter patents are invalid, it is presently unnecessary to relate the circumstances upon which the plaintiff bases its charge of unfair competition. On the record now before us it is not possible to say, either as a matter of fact or law, how far the trial court's adjudication of validity with respect to the Drucker and Peter patents entered into and molded the court's appraisal of Bates' conduct as having been performed or exerted in good faith. Yet, under applicable law, a proper finding in such regard is fundamental to the correct disposition of the claim for unfair competition.

■■■ As jurisdiction of the case depends upon diversity of citizenship, the questions in the federal court, whether the defendant's conduct was tortious and, if so, to what extent it is answerable therefor in damages, are to be determined by local law. Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 62 S.Ct. 853, 86 L.Ed. ——, decided March 30, 1942; Fashion Originators' Guild v. Federal Trade Commission, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949. It is therefore necessary to ascertain the law of New Jersey (the State of the forum), which neither the learned trial judge nor counsel appear to have done. It would seem from the facts appearing of record that the torts alleged were committed both within and without the territorial limits of New Jersey. But in any event, the rights of the parties are to be determined according to the law of that State whether that be ascertained from substantive rules internal to New Jersey or by

reference under the State's rule of conflicts. Where jurisdiction depends upon diversity of citizenship the federal forum follows and applies the local rule of conflicts. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. Cf. Waggaman v. General Finance Co., 3 Cir., 116 F.2d 254, 257; Sampson v. Channell, 1 Cir., 110 F.2d 754, 759-762, 128 A.L.R. 394. See, also, Goodrich, Conflict of Laws (2d ed.) § 12.

■■■ As to such of the alleged torts as were committed outside of New Jersey, the right to recover therefor in a New Jersey court would ordinarily be governed by the law of the particular State where the torts were committed. Potter v. First Nat. Bank, Ch., 107 N.J.Eq. 72, 74, 75, 151 A. 546. What that law may be cannot be ascertained, however, until the foreign place of commission of the tort is more specifically located by additional proofs. In so far as the torts, which the plaintiff alleges, were committed in New Jersey, a want of good faith on the part of the alleged offender is essential to maintenance of the action. Cf. Andrew v. Deshler, Err. & App., 45 N.J.L. 167.

■■■ While the Andrew case was an action for slander of the plaintiff's title to certain letters patent, it furnishes by analogy the nearest indication of the pertinent law of New Jersey that has come to our attention. In that case the alleged libel was a notice published in several newspapers by the defendant as Secretary of the United States Dairy Company. The notice stated that the Dairy was the owner of certain patents and warned against use of the Andrew patent by others. It also stated that suits were pending against parties using the Andrew patent and that an injunction and decree had been obtained against Andrew. This statement as to the injunction and decree was false. The trial judge nonsuited the plaintiff on the ground that there was no evidence of malice or want of probable cause sufficient to maintain the action. The Court of Errors and Appeals said (45 N.J.L. pages 169, 170) that all of the cases agree that to maintain the action there must be evidence of malice, express or implied. The real point on malice, the court further said, was whether the defendant made the statement bona fide and under an honest impression of its truth or whether he made it maliciously with the purpose of slandering the plaintiff's title.

The rule generally has been stated to be that "a notice warning the public or specific dealers or users of a suit for patent infringement is not actionable unless it appears that the notices were not given in good faith, or that they were entirely without foundation in the scope of the defendant's patent."[2] This rule finds support in decisions of other state courts.[3] And, of course, in the absence of any applicable local law, a federal court is free to apply general law as most likely comporting with the local state's outlook. From what we have said, the necessity for a rehearing and redetermination of the claim of unfair competition in the light of the material proofs and the applicable local law is apparent.

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

[2] Hopkins, Law of Trade Marks, Tradename & Unfair Competition, 4th Ed., p. 373.

[3] Edwards v. Buffalo Specialty Co., 234 Mass. 521, 125 N.E. 624, 626; Aronson v. Orlov, 228 Mass. 1, 116 N.E. 951, 955; Walters v. Clairemont Sterilized Egg Co., 242 N.Y. 521, 152 N.E. 410.