## WENNAGEL v. CONSOLIDATED GAS, ELECTRIC LIGHT & POWER CO. OF BALTIMORE.

(Circuit Court of Appeals, Fourth Circuit. March 21, 1922.)

### No. 1941.

Patents ⬅️328—1,307,070, for device for dissipating heat in underground conduits, held void for lack of invention.

 The Wennagel patent, No. 1,307,070, for a device for dissipating heat in underground conduits, consisting of the insertion in one compartment of the conduit of a small perforated water pipe, by means of which the surrounding earth may be moistened, *held* void for lack of invention, as merely applying a well-known device to a new use; other sprinkling devices being then in use.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in equity by George F. Wennagel against the Consolidated Gas, Electric Light & Power Company of Baltimore. Decree for defendant, and complainant appeals. Affirmed.

Wallis Giffen and Lee S. Meyer, both of Baltimore, Md., for appellant.

E. M. Sturtevant, of Baltimore, Md., for appellee.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

KNAPP, Circuit Judge. Wennagel brought this suit to obtain an injunction and damages for infringement of his patent, No. 1,307,070, issued June 17, 1919, "for an alleged new and useful improvement in dissipating heat from underground conduits." The court below held the patent invalid for want of invention, and he appeals.

The electric current passing through high-tension cables in underground conduits generates a considerable amount of heat, which radiates through the paper wrapped around the conductors of the cables, and through the lead sheathing which covers the cables, into the tile conduits, and thence into the earth. If the surrounding earth is moist, this heat is readily absorbed; but, if the earth is dry, it acts as an insulator and holds the heat in the conduit line. In such cases the heat continues to rise, until it gets so high that the cable carbonizes and breaks down.

Wennagel's device for meeting this condition, as described in his patent, consists of the insertion, in one of the ducts or compartments of a conduit line, of a small water pipe, with holes at spaced intervals, and the connection of this pipe with a water main, so that water can be turned on as needed, which will percolate through the joints of the conduit and thus supply the necessary moisture to the surrounding earth.

The electrical conduit system of the city of Baltimore is owned by the municipality and operated by a commission, known as the electrical commission. Defendant's cables are installed in this conduit system. Wennagel was an employé of the commission from 1912 to 1918. He names May, 1915, as the date of his invention. In August, 1916, he made application for a patent, which was rejected in February, 1917. An amended application, filed in June of that year, was also rejected, but upon reconsideration was finally allowed, in July, 1918, apparently upon the representation that water for cooling electrical conduits had not been in public use for more than two years prior to the application.

If this was the theory on which the patent was granted, it certainly was contrary to undisputed facts. As early as 1912, Wennagel himself had suggested the use of water in the Baltimore conduits, to avoid the troubles caused by heat, and was, of course, perfectly aware of its use for that purpose; and prior to 1913, the Niagara Falls Power Company had adopted the plan of dissipating heat from its cables by spraying them with a rubber hose introduced into the conduits and connected at the manholes with pipes from the water supply of the

city. In that year also its general superintendent, Mr. Imlay, devised a method of supplying water to the earth in which conduits are laid by placing on top of them a line of terra cotta pipe; the water let into this pipe from the city main percolates through the pores of the terra cotta and moistens the adjacent earth. The testimony shows that this method has proved satisfactory and come into extensive use. It is described in a paper read by Mr. Imlay at a convention of electrical engineers in New York in February, 1915, and published in November of that year, and this paper was brought to Wennagel's attention while he was at work on his invention.

It appears, in short, that for some four years before Wennagel applied for a patent the method of cooling cables by injecting water through a rubber hose, and thus moistening the surrounding material, had been in effective use by the defendant company at Baltimore, and that the same method had been employed by the Niagara Falls Company for even a longer time, until Imlay adopted the plan of conveying water through a terra cotta pipe laid on top of the conduit; and all that Wennagel has done, so far as we can see, is to substitute an iron pipe with holes in it for the terra cotta pipe and the rubber hose. That this involved no exercise of the inventive faculty seems to us beyond serious question. To put an old appliance to a new use is not invention. Sprinklers of various types have been long familiar, and none more simple than a piece of perforated pipe. The sprinkler in suit possesses no novelty of design or mode of operation; it is merely shown to be adaptable to a use to which it had not before been devoted. The proper adjustment of the old device, so that it will successfully perform the new service, may require a considerable degree of mechanical skill, but the surmounting of such difficulties is not evidence of that originality of conception which is necessary to sustain a patent.

As we understand the matter, the result desired in this case is attained, not by the direct application of water to the cables or conduit line, which would seem to be comparatively ineffectual, but by so moistening the adjacent earth that the excessive heat will be absorbed or conducted away as fast as it is generated. This may be accomplished, among various ways, by injecting water through a hose, by conveying it through some porous material, or by supplying it through the simplest kind of a sprinkler. But the latter method is not essentially different from the others, and like them calls for nothing more than the exercise of ordinary mechanical skill. It is only repeating to say that the discovery that an old device will meet a new need is not invention. The learned trial judge was therefore right in holding that the instant case is governed by Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438, decided in 1882, and frequently quoted with approval. The sharp criticisms in the opinion in that case are doubtless not applicable to Wennagel, but the principle there laid down is controlling. Even more in point is Lovell Manufacturing Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307, in which the Supreme Court, citing numerous decisions, says (147 U. S. 637, 13 Sup. Ct. 477, 37 L. Ed. 307):

"The principle deducible from those cases is that it is not a patentable invention to apply old and well-known devices and processes to new uses, in other and analogous arts."

The decree appealed from will be affirmed.