884

## MOORE v. BALTIMORE & O. R. CO.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1930.

No. 2914.

A. Miller Belfield and Walter F. Boye, both of Chicago, Ill., for appellant.

Arthur C. Fraser, of New York City (Duncan K. Brent, of Baltimore, Md., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This was a suit to enjoin infringement of patent No. 1,502,050, covering dust suction apparatus for use in connection with belt conveyors in grain elevators. The defendant denies infringement and avers that the claims of the patent relied on are invalid for lack of invention and because of anticipation and prior use. The learned judge below, after an exhaustive analysis of the evidence, held the claims invalid and dismissed the bill. Complainant has appealed.

As is generally known, grain is transported in elevators by means of belt conveyors. The use of these causes much dust, particularly at the pulley where the grain is dumped, the dust being thrown off first by the grain as it leaves the belt, and then by the belt itself as it passes under the pulley on its return. Unless controlled, this dust is a source of grave danger and in the past has caused many disastrous fires and explosions. Suction devices for its collection and removal have been in use for many years; but their use in public elevators has been attended with much opposition, for the reason that in such elevators it is of great importance that the weight of the grain be not affected, and, if not properly applied, such devices will affect its weight. The problem in every case is to apply the suction in such way as to remove the dust without affecting the weight of the grain; and for accomplishing this purpose various devices have been used, which we shall describe at greater length hereafter, and which, we agree with the court below, anticipate the broad claims of the patent upon which complainant relies.

The purpose of the invention is thus described by complainant in the specification of the patent:

"The objects of my invention are to provide ventilating means peculiarly adapted for use with the discharge boots and trippers of belt conveyers; to provide ventilating means incorporating hoods that are compact enough to be readily accommodated by the restricted space wherein they are required to be situated and yet which are of ample capacity to take care of all of the dust and chaff that is thrown off by the conveyer; to provide ventilating hoods of the aforesaid character which are so designed as to attract the chaff and dust without exerting any influence over the grain or other commodity being handled by the belt; to provide a ventilating hood so designed as to cause a free and uniform flow of the air and its content therethrough, to the end that no retardation or 'choke' in the flow is created; to provide a ventilating hood through which the air is drawn with a swirling action, causing the dust and chaff to be held in suspension thereby preventing clogging; and to provide ventilating means of the aforesaid character which is comparatively simple and inexpensive of production and is especially convenient of installation in existing types of discharge boots and trippers."

Attached to the specification are drawings of a belt conveyor discharging into a receiver and of a "tripper" in action, marked Figures 1 and 2, respectively, which, for a better understanding of the points involved, we herewith set forth. It should be explained that a tripper is a mov-

able combination of pulleys used for dumping the grain at any of the various bins or receptacles over which the belt conveyor passes. At the points marked *10* will be seen the specially designed "ventilating hood" which complainant purposes to attach at the points indicated.

in the specification as follows, the drawings to which reference is made being copied below:

"Turning now to my improved ventilating hood, illustrated in detail in Figs. 3 to 5 and designated *10* in all views of the drawing, the same comprises a substantially

*Fig. 1.*

*Fig. 2.*

The specification states with respect to Figure 1:

"According to my invention, I situate above the mouth of the boot, and beneath the opening *9* thereof, respectively, *one of my special hoods 10*, and these hoods have communicative connection, through branch ducts *11*, with a suction conduit *12*. The character and construction of the hoods *10* will be described hereinafter in detail." (Italics ours.)

The "ventilating hood," which, together with the location thereof, would seem to be the substance of the invention, is described

frusto-conical casing *40* that is approximately spiral in cross-section, as shown particularly in Fig. 4, and this casing is provided with an inlet opening *41* along one side which, in the present instance, is illustrated as of the same width throughout its length. The opening registers with the inner end of a receiving nozzle *42* that gradually increases in area toward its outer end. The larger end of the casing *40* is provided with an outlet extension or collar *45* for connection with the suction duct. By reason of its shape, this ventilating hood is exceedingly efficient and peculiarly adapted

for the purpose intended, as it has a comparatively large capacity, will not clog, and causes no retarding effect upon the flow of air therethrough. Because of the fact that the volume or capacity of the casing *40* increases gradually toward the outlet end, a substantially uniform suction is created throughout the entire length of the receiving nozzle; and the air, entering at a tangent to the casing produces a decided swirling action which maintains the dust and chaff in suspension and produces a siphon action within the nozzle, wherefore there is no liability of either the casing or nozzle becoming clogged. Furthermore the peculiar shape and the compactness of the hood adapt it to the restricted space wherein it is necessary to locate the hood in connection with discharge boots and trippers of belt conveyers.''

It is not contended that the suction hoods used by defendant are of the type shown by complainant's drawing; and the claims of the patent with relation to the structure thereof need not be considered. We have set forth the drawings of the hood and the description thereof because, in our opinion, it is the substance of complainant's invention, and for the purpose of making it clear that this feature of the patent, which would seem to be valid, is not infringed. Complainant bases this suit for infringement, not upon any claim respecting the structure of this hood, but upon the broad language of the first seven claims of the patent, which are as follows:

''1. In combination with a belt conveyer, a receiver into which the belt discharges its load, and a suction hood situated adjacent to the return side of said belt and beneath the mouth of the receiver, said hood being adapted to have a communicative connection with a suction system.

''2. In combination with a belt conveyer, a receiver into which the belt discharges its load, and a pair of suction hoods situated adjacent the mouth of the receiver one above and one below the plane at which the load is discharged, said hoods being adapted to have communicative connection with a suction system.

''3. The combination with a belt conveyer, a receiver into which the belt discharges its load, and a suction hood situated outwardly beyond the lower side of the mouth of the receiver, said hood being adapted to receive the refuse retained by said belt after the load is discharged, said hood being adapted to have communicative connection with a suction system.

''4. In combination with a belt conveyer, a receiver into which the belt discharges its load, and a pair of suction hoods, one situated outwardly beyond each the top and the bottom sides of the mouth of the receiver, the upper of said hoods being adapted to receive the refuse discharged with said load, the lower of said hoods being adapted to receive the refuse retained by said belt after the load is discharged, said hoods being adapted to have communicative connection with a suction system.

''5. In combination with a receiver of the character set forth, a pulley supported adjacent the mouth of the receiver, a conveyer belt guided over the pulley so as to discharge its load into the receiver, a suction hood supported above the receiver with its receiving nozzle adjacent the mouth of the receiver, said hood being adapted to receive the refuse discharged with the load, and a second ventilating hood disposed in proximity to the underside of the pulley in a position to receive refuse retained by said belt after the load is discharged and refuse escaping from the underside of the receiver, said hoods being adapted to have communicative connection with a suction system.

''6. In combination with a belt conveyer, a tripper therefor involving pulleys over which the belt is guided to provide a downwardly directed portion, the tripper having

a chute the mouth whereof is in such position as to receive the load from the belt, and suction hoods disposed in operative relation to the mouth of the chute, said hoods being adapted to have communicative connection with a suction system.

"7. In combination with a belt conveyer, a tripper therefor involving a chute into which the belt discharges its load, and a suction hood disposed in operative relation to the mouth of the chute, said hood being adapted to have communicative connection with a suction system."

Defendant has built a large grain elevator at Locust Point in the city of Baltimore, and has equipped same with a modern dust collection and removal system having 483 separate and distinct outlets. There are 15 conveyor belts in use in this elevator, and these are equipped with 30 suction devices, which are alleged to infringe the patent in suit. It is contended that these infringe claims 1 and 3 of the patent, in that they present a suction hood situate adjacent to the return side of the conveyor belt, beneath the mouth of the receiver, and "outwardly beyond" the lower side of its mouth, and that they infringe claims 2, 4, and 5 because they present such a suction hood used in connection with one situate above the belt and outwardly beyond its mouth. There are four slightly differing types of suction hoods in use by defendant, which can be more easily illustrated by drawings than described. Figure 23 below illustrates the type most nearly embodying the language of the claims; figure 25, the type farthest removed therefrom. The upper suction hood in each case is marked $H$ and the lower $H'$.

Fig. 25.

Fig. 23.

The claims of the patent upon which complainant relies make no reference to the use of the special ventilating hood, described with so much particularity in the specification and illustrated in the drawings, and they are unquestionably broad enough to cover the suction devices used by defendant. The trouble, from complainant's standpoint, is that they are too broad. When construed, as complainant would have us construe them, so as to cover any suction device situate beneath the belt and outwardly beyond the lower side of the mouth of the receiver, or such a device used in connection with one situate above the belt and outwardly beyond the mouth of the receiver, they are void because lacking in invention and because anticipated by prior use in the art.

In the first place, we think that the claims are void for lack of invention. There is nothing new in the collection and removal of dust by suction hoods and conduits. And it certainly does not rise to the dignity of invention to place such hoods and conduits at the places where every one knows that the dust is created. It was well known, and so stated by complainant in his application for the patent, that a considerable amount of dust is thrown in suspension as the grain leaves the belt, and that about 60 per cent. thereof rolls back and escapes through the

888

mouth of the receiver, whereas the chaff with the heavier dust clings to the belt as it goes around the pulley and is thrown off beneath the lower side of the mouth of the receiver. It required no invention to place one suction hood above and one below the belt at the mouth of the receiver for the purpose of collecting this dust. On the contrary, it is just such a location of the hoods as would naturally occur to anyone skilled in the art. At best, it was but the applying of a well known device to a new use. New York Scaffolding Co. v. Liebel-Binney Construction Co., 254 U. S. 24, 41 S. Ct. 18, 65 L. Ed. 112; Berlin Mills Co. v. Procter & Gamble Co., 254 U. S. 156, 41 S. Ct. 75, 65 L. Ed. 196; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 S. Ct. 472, 37 L. Ed. 307; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438; A. S. Kratz Co. v. Double Envelope Corporation (C. C. A. 4th) 288 F. 971; Wennagel v. Consolidated Gas, etc., Co. (C. C. A. 4th) 280 F. 370; Armstrong Seatag Corp. v. Smith's Island Oyster Co. (C. C. A. 4th) 254 F. 821.

It is claimed, however, that placing the suction hoods "outwardly" from the receivers results in "indirect" suction which attracts the dust without the grain, and that this constitutes invention. The contention is that such location of the suction hoods results in drawing in air from outside the receiver with the escaping dust and that the application of the suction in this way does not affect the grain as it is being thrown off of the belt. The answer to this is that, so far as the lower hood is concerned, "outwardly from the receiver" is not only the obvious, but the only practical, location for it. Furthermore, it is entirely immaterial whether this hood exerts suction directly on the belt beneath the pulley or not, as the grain has already been thrown from the belt into the receiver before the belt comes within the draft of the hood. So far as the upper hood is concerned, it is perfectly obvious that it should be placed as far from the falling grain as possible; and the entrance of the receiver from which the dust comes rolling backward is the logical place for it, and one which would naturally occur to any skilled mechanic or engineer, unless a location elsewhere were necessitated by some other consideration. In fact, just such an external location for a dust suction hood on threshing machines is shown by the Olds patent, No. 226,344, of 1880. And it is worthy of note in this connection, that a claim in the original application of complainant here for a ventilating hood situate adjacent to and above the mouth of the receiver was rejected by the Patent Office and abandoned by claimant. It is difficult to see how the mere combination of such a hood with one situate beneath the belt could constitute invention.

But we think that the broad claims of the patent are void for lack of novelty as well as for lack of invention. We agree with the court below that the evidence shows beyond a reasonable doubt that, before plaintiff claims to have invented his device, suction hoods had been used in grain elevators both above and below the conveyor belts and outwardly from the receivers. Complainant objects that some of the evidence as to prior use relates to use within two years of his application; but this is entirely immaterial. It is true that, under section 4886 of the Revised Statutes (35 USCA § 31), public use of the subject matter of an invention for not more than two years prior to an application will not bar the inventor's right to a patent; but this applies where the applicant is the inventor. Where the device used was not invented by the applicant, but devised by others, it constitutes an anticipation irrespective of the period by which it antedates his supposed invention. To be patentable, the device must be new; and it is not new if others have already made use of it. Walker on Patents (6th Ed.) §§ 110 and 111.

As early as 1906 the elevator of the Cleveland Grain Company at Cleveland, Ohio, was equipped with suction hoods beneath the belt of the conveyor. That these hoods were situate adjacent to the return side of the belt and beneath the mouth of the receiver is abundantly established by the evidence. It also appears that they were situate outwardly beyond the lower side of the mouth of the receiver and that they drew in air, not through the grain but from outside the receiver or boot of the elevator.

In 1913 or 1914 the elevator of the Washburn-Crosby Company of Buffalo, N. Y., and in 1914 the elevator of the Atchison, Topeka & Santa Fé Railway Company at Argentine, Kan., were equipped with suction hoods similarly situated and operated on the same principle.

In 1920 a dust-collecting system was installed for the Quaker Oats Company at Akron, Ohio, which combined suction hoods above the receiver with suction hoods beneath the belt and outwardly from the receiver. In the same year the same company equipped its elevator at Memphis, Tenn., with a system which made use of the same sort of combination of hoods. In 1913 the Hecker-Jones-

Jewell Company, of Buffalo, N. Y., installed a tripper which made use of a dust hood situate above the belt and outwardly from the receiver.

There is evidence of a number of other prior uses of suction hoods above and below the belt and on trippers in grain elevators, all of which is fully discussed by the judge below, with whose conclusion in regard thereto we thoroughly agree. We shall not go into this further, however, as we think that from what has already been said it is clear that there is nothing in the claims relied on which is not anticipated by prior use in the art.

Complainant objects that the upper hood as shown in such construction as that of the Akron and Memphis plants is not attached "outwardly" from the receiver, and hence does not employ "indirect suction," and that the dust hood of the Hecker-Jones-Jewell tripper is a closed hood which does not employ "indirect suction" and besides is not used in connection with a lower hood. None of these objections, we think, is meritorious. As stated above, the location of the upper hood is a mere matter of skill, not arising to the dignity of invention; and it will be noted that, although not located outwardly from the receiver, the upper hoods of the Akron and Memphis plants necessarily draw in air from the outside, which is the very essence of complainant's claim as to indirect suction. If there be any particular merit in locating the dust hood outwardly from the receiver, this was shown in the prior art by the location of the lower hood, which was located outwardly from the receiver at the point where the dust was discharged. Certainly it does not involve invention to locate another such hood at a similar point where there is discharge of dust. As said by Judge Bond, in Millner v. Voss (C. C.) 48 F. 832, 833: "Where one stove is found to be unequal to the heating of a room, to put another beside it, even though smaller, requires no invention."

With respect to the dust hood of the Hecker-Jones-Jewell tripper, it is true that this was closed; but it was certainly situated "outwardly beyond" the receiver and above the belt; and there is nothing in the language of the claims relied on which indicates that the upper hood is not to be closed or that it is to be so constructed as to draw in outside air in the manner that complainant describes as indirect suction. That the hood on the Hecker-Jones-Jewell tripper was not used in connection with a lower hood is immaterial, so far as the question here is concerned; for it could not involve patentable novelty to use an upper hood old in the art in connection with a lower hood which is also old. There is no invention in mere aggregation. Walker on Patents (6th Ed.) par. 70; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241.

From what we have said with respect to the location of the dust hoods generally, we think it follows that there was no invention in locating them at the points on the tripper indicated by claims 6 and 7 of the patent and as shown by Figure 2 of the drawing. But in addition to this, it clearly appears from the evidence that the dust suction system on the trippers of defendant could not possibly infringe the claims upon which plaintiff relies. They have no hood having "communicative connection with a suction system" and there is certainly no use of the "indirect suction" which complainant insists on as the basic principle of his patent. On the contrary, they are equipped with independent suction attachments, which, by the use of fans attached to the tripper, draw in the dust thrown off by the belts and discharge it back again into the down flowing stream of grain.

Our conclusion, therefore, is that all of the claims of the patent relied upon by complainant are void, both for lack of invention and lack of novelty, and that, with respect to the tripper, there is no element of infringement. Complainant's contention that he has solved a problem in the art is, we think, entirely without foundation. His patent is nothing but a "paper patent," and the only ground for saying that the devices which he proposes are successful, is the success that has been attained by somewhat similar devices in the prior art and in the elevator of defendant. It is clear that defendant's success has been due, not to anything derived from complainant, but to the skillful use of devices familiar in the prior art and to the proper regulation of the air current employed by means of sliding valves, upon which it is not necessary to elaborate.

In dismissing the bill there was no error, and the decree to that effect is accordingly affirmed.

Affirmed.