**TUMBLER et al. v. BALTIMORE PAINT & COLOR WORKS, Inc., et al.**

No. 2296.

District Court, D. Maryland.

Dec. 9, 1935.

For prior opinion, see 11 F.Supp. 183.

Simon E. Sobeloff, of Baltimore, Md., and Samuel Ostrolenk, of New York City, for plaintiff.

Harry O. Levin, of Baltimore, Md., and Herbert J. Jacobi, of Washington, D. C., for defendant.

CHESNUT, District Judge.

In this patent case an interlocutory decree, finding the validity of the plaintiffs' patent with respect to certain enumerated claims and infringement thereof by the defendants, was filed June 27, 1935. On July 24, 1935, the defendants filed a petition for rehearing with affidavits and exhibits setting out certain alleged newly discovered evidence which, it was alleged, constituted a defense to the patent based on prior knowledge and public use. This was opposed by the plaintiffs. After examination of the papers and after hearing counsel orally on the motion and considering briefs, I remained in doubt as to whether the new matter set up justified a rehearing. I therefore decided to hear the new testimony orally. The hearing was held on November 12, 1935, and after oral argument of counsel, further extended briefs were filed, and I have given renewed consideration to the subject matter.

At the conclusion of the testimony I summarized from the Bench the substance of what the defendants had proved as additional evidence. This summary I think may stand as a sufficient finding of facts. Further condensed it shows that a Mr. Ginn of Cincinnati, Ohio, interested as a manufacturers' agent and having had some technical experience in 1926 and shortly prior thereto with oils of various kinds, was experimenting in the use of blown oils, particularly to determine whether he could make a good ink. Incidentally, during his experiments the idea occurred to him that some combination of blown oils with other oils might make a good polish for automobiles or furniture. He kept a somewhat informal notebook in which from time to time various memoranda were made with regard to certain of his experiments. On July 8, 1926, he made a memorandum as follows:

"Discovered that blown oils are miscible with other blown oils in all (word illegible) but irrespective of the degree of blowing of each but are not miscible with unblown oils. Examined several linseeds and castor—but blown castor makes an unusual lustre if dissolved in thinner and rubbed on furniture. High refractory index."

After some further recorded notes (particularly about inks), he made a further notation as follows:

"How would blown castor work in emulsion for automobile polish? Aug. 10, 1926. Blown castor 10%; turpentine 20%; oleoc 1%; caustic soda added until slightly on alkaline side; kerosene 19%; water 50%."

"This made a very interesting looking automobile polish—much better than linseed-turpentine-water emulsion, I used before. It may be a good business to go into some day."

Mr. Ginn made up about a gallon of the polish and used it three or four times off and on over a period of three or four months on his automobile. He gave some of it to two or three plant associates who used it as a furniture polish at home and one or more used it on an automobile. They liked it.

Mr. Ginn, being busy with other matters, did not further develop the use of the polish for automobiles or furniture. His attention was not again called to the subject until some time in 1929, after the plaintiffs' polish had come on the market. During 1929 (but as he says without relation to the plaintiffs' product) a gentleman who was interested in selling an automobile polish came to him and asked advice with regard to constituents of an automobile polish which the latter was then selling and which was nothing like the plaintiffs' product. Mr. Ginn said he could make a very much better polish than that and thereupon reverted to his experiments in 1926; but not being satisfied with that formula for use at the later time, made some changes in it which he thought would have better effect in stabilizing the emulsified product. Shortly thereafter in connection with this same gentleman, he organized the Chemical Specialties or Varieties Company and sold an automobile polish under the name of Ray-O-Shine. He conducted further experiments in connection therewith which it is agreed are not material in this case.

The question presented by this additional evidence is what is its legal effect

with respect to showing prior knowledge or public use to defeat the plaintiffs' patent. It is to be especially noted that the record made by Mr. Ginn of his laboratory experiments noted the use of blown castor oil but makes no reference whatever to the use of "pale blown" castor oil. In his testimony he said in general that the blown castor oil he used was pale blown but his records made no mention thereof. Others connected with him in his business also knew that he was using some form of a blown castor oil but did not know that it was pale blown. He did not produce any samples of the automobile polish made by him in August 1926. He did produce a sample of a polish said to have been made by the same formula which, in superficial appearance, resembled that of both the plaintiff and the defendant in this case. The use by Mr. Ginn of his polish in August 1926 on his automobile was witnessed by one or more other persons who, however, did not know the particular formula for the polish.

Defendants contend that this testimony shows the invalidity of the plaintiffs' patent for two reasons: (1) Prior knowledge and use by Ginn and (2) public use more than two years prior to Tumbler's patent application on September 13, 1929. Tumbler's discovery, according to the evidence in the case, was not earlier than September 1927 (U.S.C.A. title 35, § 31).

 I do not think the evidence shows a "public use" sufficient to defeat the Tumbler patent, within the meaning of the statute (as Tumbler was in no way related thereto), unless it also shows an anticipation of Tumbler by Ginn. See Moore v. Baltimore & O. R. Co., 37 F.(2d) 884, 888 (C.C.A.4). But this is not important in this case because I conclude that Ginn's knowledge or discovery to the extent of his *recorded* laboratory experiments are legally sufficient under the holding of the Supreme Court in Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610, to constitute prior knowledge and discovery to the extent of what was recorded by Ginn. While it is, I think, apparent that what Ginn was doing and noting was experimental with him in the ordinary sense of that term, I do not think the testimony shows that Ginn's experiments can be disregarded in this case merely as an abandoned experiment under the doctrine of Deering **v.** Winona Harvester Works, 155

U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153. The nature of Ginn's notations of laboratory experiments seems to be quite similar to those made by Kratz as reviewed by the Supreme Court in the Corona Cord Tire Co. Case, and which were held sufficient to invalidate the Weiss patent there involved on the ground of priority of discovery by Kratz. See also article captioned "Experimental Use as Affecting the Validity of a Patent" by E. W. McCallister, printed in Journal of the Patent Office Society, May 1934, pp. 387–413.

 However, with respect to this particular case it remains to consider whether what Ginn discovered and noted is really an anticipation of the plaintiffs' patent. In this connection I think we are properly limited to what Ginn recorded and should not accept in addition thereto his purely verbal testimony with regard to the use of "pale blown" castor oil. As to this he was testifying purely from personal recollection and not corroborated in any way either by knowledge of others or any physical exhibits or written memorandum. It has been emphasized time and again by the courts in considering a defense of prior knowledge in patent cases the proof must be clear and convincing and should generally not be accepted as sufficient in the absence of some physical exhibit or written memoranda. Barbed Wire Patent Case, 143 U.S. 275, 284, 12 S.Ct. 443, 450, 36 L.Ed. 154; Deering v. Winona Harvester Works, 155 U.S. 286, 300, 15 S.Ct. 118, 39 L.Ed. 153; Eibel Process Co. v. Paper Co., 261 U.S. 45, 60, 43 S.Ct. 322, 67 L.Ed. 523; Virginia-Carolina Peanut Co. v. Benthall Machine Co., 241 F. 89, 98 (C.C.A.4); Walker on Patents, (6thEd.) Vol. I, s. 116; Rokap Corporation v. Lamm (D.C.) 10 F.Supp. 219, 224. The failure of Ginn to make any record of his use of pale blown castor oil in the formula which he recorded is at least highly indicative that he attached no special importance to it. This latter is indeed the essential feature of the plaintiffs' patent and its importance appears from the wording of the several patent claims and the discussion in the original opinion in this case. 11 F.Supp. 183, 186. Thus it was said in the original opinion: "The course of the case in the Patent Office however brought out the point that an important characteristic of the plaintiffs' invention consisted in the immiscibility of the castor oil with the mineral oil and that

the result best obtained was with that form of castor oil known as 'pale blown' or 'cold blown' castor oil. The result was that the claims as allowed all involve as an essential feature of the plaintiffs' preparation this form of castor oil, and are, of course, limited thereto." And again: "But it is contended by the plaintiffs, and the evidence seems to bear them out in this respect, that Tumbler was the first to use the *combination* of mineral oil with *pale blown* (that is, blown at comparatively cold or low temperatures) castor oil in an immiscible combination, both dispersed and suspended in emulsified form in water, as the principal constituents for a *liquid polish*." And again: "The ideal for a liquid automobile body polish (and what was sought by Tumbler) was a preparation that (1) would remove the worst of the 'traffic film,' (2) repair the ravages of the atmospheric conditions on the lacquer, and thus restore its lustre; and (3) which could be easily, quickly and economically applied. In searching for the answer to the problem Tumbler hit upon cold blown castor oil, in certain proportions with a mineral oil, and other minor ingredients, which were capable of developing the most effective properties of the castor oil, for the particular purpose."

It is at least doubtful, in view of the prior art, whether what Ginn discovered and recorded added anything new to what was previously known with respect to the use of blown castor oil in different combinations. And, assuming that Ginn did use a pale blown castor oil, it is reasonably inferable from his testimony that he attributed no great weight or importance to it as a special feature of blown castor oil. This, however, is the essence of the plaintiffs' discovery.

As pointed out in the opinion the plaintiffs' patent is, of course, a very narrow one for a very special combination of ingredients for an automobile polish. The mere fact that Ginn discovered that *some form* of blown castor oil would possibly make a good automobile polish does not seem to me to be an anticipation of Tumbler's later discovery that the ideal combination for a liquid automobile body polish would be based on the use of *pale blown* castor oil in combination with other ingredients in accordance with his formula. Then again, while what Ginn record-ed is not, I think, to be treated as an abandoned experiment, nevertheless it is apparent that he himself had not reached any certain and definite conclusion about the matter, as indicated by the suggestive rather than conclusive nature of his memorandum. Another important feature of the plaintiffs' combination is the substantial immiscibility of the two oils, and the stabilizing of the emulsion for purpose of commercial use. And when Ginn's interest in the subject was again revived in 1929 it is to be noted that he was not satisfied with his 1926 formula with respect to the stability of the product in emulsified form, and changed it.

The plaintiffs' patent is, of course, a very narrow and limited one for a very special combination. In my opinion Ginn's recorded memorandum does not constitute an anticipation, by prior knowledge of the plaintiffs' very limited patent. The following summary by plaintiffs' counsel of the additional testimony is, I think, substantially correct.

"From the foregoing, it will be obvious that W. W. Ginn's testimony of his alleged use based on memory of the events nine years ago, unsupported by any documentary evidence and uncorroborated by any witness who knew all the ingredients of the polish which Ginn alleges he made and used, is not sufficient to establish a prior use for invalidating a patent.

"In fact, the construction of the only documentary evidence offered relating to a laboratory experiment supports quite the contrary conclusion; namely, that what Ginn did, if anything, was to perform a laboratory experiment on a polish containing ingredients which he admittedly changed when he attempted to sell the polish; which is so vaguely described even as to the blown castor oil that it would not have provided a basis for a patent application and could just as likely have consisted of castor oil blown at a temperature and pressure at which it became miscible with mineral oil which his uncle described he had seen W. W. Ginn make; and which experiment apparently was abandoned or kept in secrecy and without making it available to the public."

What was said by the Supreme Court in Barbed Wire Patent Case, 143 U.S. 275, 285, 12 S.Ct. 443, 447, 450, 36 L.Ed. 154, quoting from Coffin v. Ogden, 18 Wall.

120, 124, 21 L.Ed. 821, may be well repeated here.

"If the thing were embroyotic or inchoate; if it rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation,—it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however, near that progress may have approximated to the end in view."

■ I am conscious that there is perhaps a natural disinclination to undervalue additional testimony in a patent case brought forward only after the main case has been tried, heard and determined, but nevertheless I have endeavored to consider this additional testimony as fully and to give it as much weight as if it had been originally introduced. So weighed and considered, I do not find it sufficient to defeat the plaintiffs' patent with respect to the claims mentioned in the decree with the exception of Claim 16 which reads: "A polishing emulsion containing water, lubricant, air blown castor oil held undissolved and in suspension in the lubricant, the castor oil and lubricant being emulsified in the water." On further consideration this claim seems to be too general and not limited to the use of pale blown castor oil. The decree heretofore entered will, therefore, be modified by eliminating this particular claim from the holding as to validity and as to infringement. I have also further considered as to whether Claim 20 is not likewise too general in that it fails to specify pale blown castor oil either by name or by reference to temperature; but it is limited to a definite proportion of oxidized castor oil to lubricating oil in the ratio of approximately one to three by volume; and it is further specified that the castor oil and lubricating oil must be immiscible and "all the products being immiscible in each other and all the products being an emulsion in the water", I have concluded that the prima facie finding of validity by the Patent Office is sufficient to sustain this claim.

Counsel may submit appropriate orders modifying the original decree by eliminating therefrom Claim 16.

And with this modification of the decree the petition for rehearing is otherwise overruled, with only ordinary taxable court costs allowed thereon to the plaintiffs.