## HUNYADY v. GENERAL MOTORS CORPORATION et al.

### No. 5662.

Circuit Court of Appeals, Seventh Circuit.

May 26, 1936.

F. Allan Minne and James L. McManus, both of Chicago, Ill., for appellant.

Drury W. Cooper, of New York City, and S. L. Wheeler, of Milwaukee, Wis., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

Appellant sued appellees for infringement of claims 19 and 20 of Hunyady Patent, No. 1,804,012. It was issued to appellant on May 5, 1931, upon an application filed February 25, 1928. The bill also sought recovery for profits and damages on account of appellees' alleged unfair use of the patent prior to its issuance. Infringement and unfair use were denied, and invalidity of the patent was asserted. The District Court found for appellees on each defense, and from that decree this appeal is prosecuted.

The patent relates to brakes for vehicles, and more particularly to a compensating or equalizing brake for use on a motor vehicle. One object of the invention was to provide a brake of the character described that, by a slight depression of the foot pedal, would apply the friction elements automatically in the manner desired. Other objects mentioned were economy, dependability and readiness of operation, durability in construction, simplicity and sturdiness in the formation and arrangements of the parts, and accessibility for the purpose of adjustment, replacement or repair.

The brake here disclosed is of the internal expansion type, which means that the brake shoes, or friction creating devices are inside the brake drums, and are pushed outwardly into engagement with it. In such type, the drum is attached to the wheel and rotates therewith. The friction devices are mounted upon a so-called anchor plate inside the drum. This anchor plate is non-rotatable and is attached to some non-rotating part of the vehicle, usually the axle housing. The wheel is brought to rest when the friction devices, or brake shoes, are moved radially against the inner surface of the drum. While the braking operation is taking place, the anchor plate is under severe strain because the energy of the moving vehicle is transmitted from the drum to the brake shoes and then through the anchor plate to the non-rotating part of the vehicle to which the anchor plate is attached. The internal expansion type of brake was quite old in the art at the time of appellant's disclosure, and it had been customary to place a cover plate at the open side of the drum to prevent the entrance of dirt or other foreign substances in it. This cover plate was also non-rotatable and was usually made of comparatively light construction because there was but little strain upon it.

The braking elements here comprise an anchor plate having an undulating edge. Lying about that edge is a similarly undulated secondary spring band, which is attached at the crests of the undulations to a circular spring band, which in turn, carries the fabric brake lining. Each end of the undulated spring band carries a lug which engages with a wedge car-

ried by the anchor plate. When the brake is applied, the wedge forces the two lugs apart, which in turn forces the brake lining against the brake drum. The friction between the brake band and drum causes a rotative movement of the band in the direction of the revolution of the wheel so that the undulations of the secondary band will engage with the undulated perimeter of the plate, and the farther the band is moved in this direction, the tighter the undulations of the secondary band will engage with the perimeter of the plate.

The friction creating devices as such are not covered by the claims in suit, and the controversy here presented solely concerns the manner in which the anchor plate is supported. For this purpose, appellant made the cover for the open side of the brake drum of thick, strong material, bending its inner periphery into a flange which extends into the drum, and turned the edge of the flange toward the axle of the car, thereby making the cover carry the anchor plate, thus transmitting the brake-torque to the axle housing.

Claims 19 and 20 [1] were not added to appellant's application until April 29, 1930, more than two years after the original application was filed. In adding these claims, he referred to his undulated anchor plate as a disk, and said, "applicant utilizes the cover member of the brake drum to mount the disk * * * upon which practically all of the brake actuating mechanism is carried."

The findings of the District Court to which appellant excepted are as follows:

"(6) The patent in suit and the claims in issue contemplate that the shoe-supporting plate * * * shall be supported on the closure for the brake drum."

"(9) None of Defendants' devices embodies the combination of elements set forth in either claim in issue.

"(10) If interpreted to read upon any of Defendants' accused structure, each of the claims in issue is readable in the same sense upon the prior art.

"(11) There is no basis in the disclosure of the patent in suit * * * for claims 19 and 20 if interpreted to apply to any of Defendants' accused devices."

"(14) Defendants do not infringe patent No. 1,804,012."

"(16) Claims 19 and 20 * * * must be limited to a supporting plate with undulated perimeter."

■ We are convinced that Hunyady's support for his anchor plate, which is the true basis for the claims in suit, was fully taught and anticipated by prior art patent to Heaslet, No. 764,357. In both Hunyady and Heaslet there is disclosed a cover plate and an anchor plate which is supported by the cover plate. In Hunyady the anchor plate is bolted to the sleeve which is integral with the cover plate, while in Heaslet the anchor plate and the cover plate are integral with the sleeve. They are substantially alike structurally, and they are alike functionally because in each the cover plate must resist the entire braking torque transmitted to it from the anchor plate. In each, the removal of the cover plate would leave no support for the brake mechanism. The only difference between them is that Hunyady prevents rotation of the cover plate by bolting it to the axle housing, while Heaslet accomplishes the same result by bolting it to two tie rods, the other ends of which are connected to the post securely fastened to the frame of the car. That detail, however, is not involved in the claims, and if it were, it would amount to a mere mechanical variation, which would not arise to the dignity of invention. New York Scaffolding Co. v. Liebel-Binney Const. Co., 254 U.S. 24, 41 S.Ct. 18, 65 L.Ed. 112.

---

[1] "19. A brake mechanism for wheels of motor vehicles comprising a brake-drum, a cover-member for the open side thereof, supporting means extending from said cover-member into said drum, a plate secured to said means, and friction creating devices mounted on said plate and including elements adapted to co-act with said drum.

"20. A brake mechanism for wheels of motor vehicles comprising a rotatable brake-drum, an axle-member upon which the wheel is mounted, a cover for the open side of said drum and extending around said axle-member, annular supporting means extending from said cover into said drum around the axle-member, a plate secured to said supporting means within the drum and having an opening through which the axle-member extends, and friction creating devices connected to said plate and including elements adapted to coact with said drum."

Appellant attempts to discredit Heaslet's disclosure on the grounds that it has no plate, and that it is not a satisfactory brake. Whether the Heaslet brake is satisfactory from a utilitarian standpoint is beside the issue here presented. At the trial appellees offered testimony with respect to the relative efficiency of brakes, and appellant properly objected to its admission on the ground that the claims in suit had no reference to the type of brake shoe. The objection was sustained and the record is void of evidence on that issue.

In brakes of this type, non-rotatable means are provided to which the friction devices, or brake shoes, are anchored. They are variously called plates, brackets, braces, flanges, or what you will, but their functions as an anchor are identical, and for the purpose of saving weight they are usually shaped with regard to the friction devices which they carry. In appellant's claims he uses the word "plate," and he reads that word as signifying a circular "disk" in an effort to distinguish it from a member not having a circular contour that merely supports the braking elements. It must again be noted, however, that the claims in suit contain nothing with respect to the capacity of the braking elements, or their manner or extent of cooperation with the brake drum. Other claims of the patent contain those features but they are not here in issue. If, as appellant urges, we attach special significance to his use of the word "plate," other than as a support for the friction creating devices, then it is imperative, as appellees suggest, that the claims be limited to a plate with an undulated perimeter which cooperates in the braking operation. Appellant's testimony, however, is not consistent with his contention in this respect. He testified that he began work in 1921 on a brake construction involving a supporting plate, which he illustrated with drawings. One was bracket-shaped, one was not circular, another was not flat, nor was it in the center line of the structure, and another was in the shape of a keystone, and he referred to all of them as "plates." The plain language of the claims does not limit the plates to any particular shape, and in bringing this action appellant does not otherwise interpret them, for the accused structures cover a great variety of plate shapes, and none of them are circular, and all of them are copied from, or are equivalent to,

the prior art. If, therefore, they are now to be considered infringements, they of necessity were anticipatory of appellant's disclosure. Aside from lack of novelty, the claims in issue must be held void for late assertion. See Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053.

With respect to infringement, little need be said. In none of the accused structures is the cover plate attached to the anchor plate, nor does it support the anchor plate or the brake shoes or the friction devices. It might be removed and yet the brake would work perfectly, for there is no cooperative relation between it and the anchor plate. This is not true of appellant's disclosure, for if his cover plate were removed, the brake would cease to function, because the cover plate is the sole support of the anchor plate.

Appellees' accused structures closely follow standard constructions of the prior art, which were exhibited in evidence. Baker No. 1,132,541; Schaeffer No. 1,490,639; Bendix No. 1,689,767; the Panhard practice of 1911; Olivier No. 1,761,933; and the Huck brake which was in production by appellees in May, 1928. In none of these structures does the cover plate support the anchor plate, and the record discloses no other structure, save Hunyady and Heaslet, wherein the cover plate supports the anchor plate. Hunyady admits that his brake has had no commercial use, and for that reason it must be construed as a mere paper patent. Only one such brake was ever made, and it was exhibited in evidence. It is obvious that when Hunyady filed his application he was interested only in friction creating devices and not in the anchor plate and its support, for he did not file the claims in issue until more than two years afterwards. This was at a time when appellees were using structures closely following, if not actually copying, the prior art which anticipated or clearly taught everything which appellees have since used, or which Hunyady disclosed, excepting the use of the cover plate as a support for the anchor plate.

It is true that Hunyady submitted his brake to General Motors in February, 1928, but this was before the claims in suit were made and filed. His application then contained only claims directed to his anchor plate with the undulated

64

perimeter, and appellees then had no reason to regard the means for supporting the anchor plate as a part of Hunyady's invention. If so, that fact constitutes no basis for this action, for appellees have never used it.

Appellant's submission of his brake to General Motors in February, 1928, constitutes the basis upon which he claims unfair use. The record discloses that the patent was not submitted, but merely the disk with the undulating perimeter, the undulating band, and the lug members which cause the relative displacement of the two to cause setting of the brake band upon the brake drum. At that time, the patent had not issued, nor had the claims in issue been asserted. Within a short time, the General Motors Corporation returned appellant's brake construction to him and notified him that it could not use it. The record discloses no appropriation by appellees of any part of the structure. We are only concerned, however, with that part of it which was subsequently covered by claims 19 and 20, and it is obvious that appellees have never infringed either of them.

We find no error in the record and the decree is

Affirmed.